## Dumas *vs.* The State of Georgia.

1. The verdict is not contrary to law or evidence.
2. One of the witnesses testified in brief as follows: About 7 o'clock at night the deceased came to witness' house; went in and sat down by the fire, and held his head with his hands; told witness that his head felt like it was fit to burst open; that he had been shot, and asked witness to get a light and see how badly he was hurt; the latter did so, and found that he was shot in the back of the head; in a few minutes he stated that a couple of darkies got into his wagon about Barnesville, and rode with him down the road, and shot him. and jumped out. Shortly after this he swayed or leaned forward in his chair. Witness made a pallet, laid him on it, and went

to a neighbor's for assistance.   Deceased did not talk further, but afterwards became unconscious and died early next morning :

*Held,* that the declarations of the deceased as to who shot him, made immediately after he had been shot and had fled to the nearest house, were admissible in evidence ; and they have been held admissible, as dying declarations, in 62 *Ga.,* 58.

3. If a juror does not understand one of the statutory questions put to him on his *voire dire,* the court may explain it to him, and that the juror thereupon answers differently, thereby qualifying himself, is no ground for new trial.

4. Where a challenge to the array of jurors had been sustained, and talesmen ordered to be summoned, the fact that some of the same jurors were again summoned is not ground for striking them for cause.   If the second panel was illegally summoned, a new challenge should have been made to the array.

Criminal law.   New trial.   Evidence.   Practice in the Superior Court.   Jurors.   Before Judge HILLYER.   Pike Superior Court.   April Term, 1880.

To the report contained in the decision it is only necessary to add the following: Leak, a witness for the state, testified as stated in the second head-note.   The declarations of the deceased as to who shot him were objected to as not being dying declarations within the rule ; but they were admitted.   Defendant's counsel challenged the array of jurors, as not being properly summoned.   The challenge was sustained, and the court ordered the coroner (the sheriff being disqualified) to summon talesmen. A number of the former jurors were so summoned ; defendant's counsel moved to strike them for cause ; the motion was overruled.

F  S. HARALSON ; J. J. ROGERS, for plaintiff in error.

R. N. ELY, attorney-general ; F. D. DISMUKE, solicitor-general, for the state.

CRAWFORD, Justice.

The plaintiff in error has been thrice tried for murder, and thrice has he been found guilty.   Thrice also has his

case been brought to this court, and twice has he been granted a new trial, though not upon grounds involving the merits. Once again he asks this court to review and reverse the judgment pronounced against him, for errors which he alleges to have been committed upon his trial; if they exist, again will it be awarded as though this were his first appearance here.

The complaints which are set up may be inquired of and adjudged under fewer heads than are named in the motion for a new trial.

1. He says that the verdict is against the evidence, against the law, and without evidence to support it.

After a careful examination we cannot bring our minds to the conclusion that these grounds are well taken. The testimony shows that the deceased was in Barnesville on the third day of November, 1877, and late in the afternoon of that day, in his wagon, he started on his way home. About 7 o'clock that night, he sought shelter and protection in the house of a colored man about eight miles from Barnesville, soon after he had been shot in the back of the head in the base of the brain, from which wound he died about sunrise on the following day. His consciousness remained with him but a few minutes after he reached the house, though immediately upon his arrival, having fled for his life, abandoning his wagon and team, he said that he had been shot by two negroes, who then jumped out of the wagon. It was proven that a pistol or gun shot was heard just about the time it was said that this transaction happened. Jeff Childs and the defendant were charged with the offense and arrested. The proof is that they were seen together at different places about Barnesville for two or three days before; that on the evening of the murder about an hour or two by sun, they went into a store together and bought cartridges for a pistol, one calling for them and the other paying the money; the clerk loaded the pistol and handed it to Childs.

The deceased and the defendant in the wagon were seen

late in the evening passing along the road in the direction of the former's home; following behind was also seen a man who was taken to be Childs from his appearance. About dark they were again seen further on the road, defendant and deceased sitting together, the other man immediately behind the deceased in the wagon. Just after they were all thus seen the homicide took place, and about 10 o'clock of that same night the defendant and Childs appeared in Barnesville together in what is known as the wagoners' house and there remained until morning.

On the following day the defendant admitted his presence at the shooting, but denied having anything to do with it, although he said nothing about it whatever until he was arrested. To witness so atrocious a murder, to walk eight miles through a thickly populated district, to spend the night in a neighboring town where the deceased was known, with many other people, and not speak of it, is inconsistent with innocence.

2. The admission of the statements of the deceased when he first reached the house of Leak, was legal under the ruling on substantially the same facts when the case was here before. See *Dumas vs. The State*, 63 *Ga.*, 600.

3. Another error complained of is, that after a juror had answered that he was opposed to capital punishment, the judge said: "Suppose a man should rape a woman?" to which the juror replied; "Give it over again; I misunderstood the question," and then, by his answer, qualified himself, the judge having no right to call him back or suppose a case.

Upon this point the judge certifies that the question asked was to explain to the juror the scope and meaning of the *statutory* question, when he of his own accord interposed and corrected his answer. The juror's response could only have made him objectionable to the state, but not so to the prisoner. The judges must exercise discretion in the conduct of business in their courts,

the duties, obligations and responsibilities of which being oftentimes thrown upon young and inexperienced jurors and witnesses, should see to it that they comprehend the matters in hand.

There was no error in this ground of the motion.

4. Because after the challenge to the array was sustained, and the coroner was ordered to summon talesman, eleven out of the first twelve put upon the prisoner were of those who had been set aside and re-summoned to serve as tales-jurors, and to each of whom the prisoner objected.

Every right which the law gives to a party either in a civil or criminal case should be allowed him. To entitle the party however to such right, he must claim it according to law, *then* complete justice may be done, if otherwise, *then* wrong and injustice may follow. Challenges to the array are allowed for any cause going to show that it was not fairly or properly impaneled, or ought not to be put upon the prisoner. Challenges for cause apply to the juror. If the panel were illegally made up as alleged in this case, we are at a loss to know why a challenge to the array would not have been as readily sustained by the court in the second as in the first instance, but none was made, and the prisoner rested his right to challenge and set aside each juror *for cause.*

To have allowed this, the judge would have permitted the prisoner the exercise of a right under a challenge for cause of which he should have availed himself by his challenge to the array, and thereby given him an advantage over the state, in objecting to such as he did not want, and accepting such as he desired. The exercise of a legal right must be enjoyed as provided by law; to allow it otherwise than so provided, would oftentimes result in a legal wrong, against which courts in the administration of law must always guard.

Judgment affirmed.