## HUMPHRIES *v.* THE STATE.

1. Following the decision of this court in *Cody* v. *The State*, ante, 105, an indictment for robbery alleging the taking from the person of another of "five dollars in paper money of the value of five dollars" sufficiently describes the property alleged to have been stolen.

2. It is no ground for a postponement or continuance of a felony case, that some of the jurors constituting the panel put upon

the accused had at the same term served in the trial of another person jointly indicted with the accused for the same offense. The proper method of objecting to such jurors would be by challenges to the polls, if they qualified upon their voir dire.

. 3. There was in the present case no evidence warranting an instruction explaining to the jury the difference between the probative value of positive and of negative testimony, and the error committed in so doing is cause for a new trial.

Argued February 15,—Decided February 23, 1897.

Indictment for robbery. Before Judge Felton. Bibb : superior court. November term, 1896.

*Hope Polhill, Marion Harris* and *John R. Cooper*, for plaintiff in error. *Robert Hodges, solicitor-general,* contra.

COBB, Justice.

Humphries was indicted for the offense of robbery, the indictment alleging the taking from the person of another of "five dollars in paper money, of the value of five dollars." There was a demurrer to the indictment, on the ground that the property alleged to have been taken was not sufficiently described. The accused was convicted, and his motion for a new trial being overruled, excepted.

1. In the case of *Cody* v. *The State*, ante, 105, it was held that an indictment for larceny after trust, which de-scribed the property as "ninety dollars in paper money of the value of ninety dolars, and two dollars in silver money of the value of two dollars," was sufficient. Following this de-cision, the court was right in overruling the demurrer.

2. A motion for a postponement or continuance of a fel-ony case on the ground that some of the jurors constituting the panel put upon the accused had, at the same term, served in the trial of another person jointly indicted with the ac-cused for the same offense, is in the nature of a challenge to the array, and, as has been repeatedly held, this is not the proper method of raising the question of the disqualification of individual jurors. Thompson & Merriam on Juries, §128; *Eberhart* v. *The State*, 47 *Ga.* 606(2). If the panel contained any jurors who were subject to challenge, the ac-

cused would have an opportunity, when they were put upon. their voir dire and qualified, to show the fact of such dis-- qualification by putting the individual juror upon the court. as a trior. It is possible that a challenge to the array would be overruled where the entire panel was composed of persons. who would be subject to challenge to the polls; and, on the other hand, a panel made up of jurors not subject to any challenge to the polls might be set aside on a challenge to the array. A challenge to the array goes to the form and manner of making up the panel, without regard to the objec-- tions to the individual jurors which compose it; while the challenge to the poll is directed solely to an objection which. is inherent in the individual juror. Penal Code, §972; *Blackman* v. *The State*, 80 *Ga.* 785(2).

3. During the progress of the case it became material to determine whether the defendant had been identified by one of the witnesses for the State at a trial in the recorder's court. which had taken place prior to the trial in the superior court. This witness testified positively that he did identify the defendant in the trial before the recorder's court as one of the persons who had committed the robbery. Mr. Grace, a witness for the defendant, testified as follows: "I repre-- sented Bud Allen in the recorder's court. I heard Syl Smith as he testified then. My recollection is that he did not identify them, but Bud Allen. He said he recognized Bud Allen by a scar on his face, and by his coat. It is my recollection that Bud Allen is the only one he recognized. I will not be positive as to all he testified to. I was repre-- senting Bud Allen, and was not interested in the others, but I put Smith under cross-examination and tested his ability to recognize Bud Allen, and it is my best recollection that he did not identify any one but Bud Allen." Syl Smith, the witness referred to in the above testimony, testified as follows: "I did not tell Mr. Grace that I could not recognize any but Bud Allen, and that on account of the scar on his jaw. I said then I could recognize Alonzo Humphries by

his features and the scar on his face. I had seen Alonzo Humphries several times before, but never knew his name, but I knew his features." After the jury had been in their room about six hours and had failed to make a verdict, the judge had them brought back into the court, and the foreman requested a charge on the subject of Mr. Grace's testimony. The judge then proceeded to charge the jury on the relative weight of positive and negative testimony, giving various illustrations of what would be testimony of each kind. The illustrations seem to be correct, and the charge as a whole seems to be sound as abstract propositions of law, with the exception that it failed to direct attention to the fact that, in passing upon the value of positive and negative testimony, the jury should consider the question as to whether the witnesses were of equal credibility. The only evidence in the case which authorized the charge on the subject of the probative value of positive and negative testimony was that which is quoted above. We do not think that the testimony of Mr. Grace is negative. While it is not emphatic, and not very strong on the point at issue, it is still positive testimony. If it had disclosed the fact that he was present and was not noticing what was going on, and did not hear or did not remember to have heard the witness identify the accused, then it would have been negative in its character; but his testimony shows that he was present and had his attention directed to what was going on, and to what was being said by the witness on the matter in issue. The defect in his evidence, if any existed, was in his failure to recollect all that was said, but what he does state is stated positively. There being no negative testimony in the case, the charge was necessarily harmful to the accused, and a new trial should have been granted.

*Judgment reversed. All the Justices concurring.*