## THOMPSON *v.* THE STATE.

1. There was ample evidence to show that the defendant was guilty as charged, and his conviction was not contrary to law.
2. A challenge to the array is an objection to all of the jurors collectively, because of some defect in the panel as a whole. If for any reason the impartiality of any one or more of the jurors whose names appear on the panel is suspected, the proper method of determining the state of feeling of such juror or jurors is by a challenge to the polls, and when thus challenged they may be put on their voir dire. And this is the rule not only in the trial of criminal cases where the charge amounts to a felony, but in the trial of misdemeanors as well.

Argued November 20, — Decided November 29, 1899.

Indictment for selling liquor. Before Judge Russell. Walton superior court. August term, 1899.

*A. C. Stone* and *George & George*, for plaintiff in error.
*C. H. Brand, solicitor-general,* contra.

LITTLE, J. The plaintiff in error was indicted for making an unlawful sale of spirituous liquors. On being arraigned, he filed a challenge to the array of jurors put upon him. The court overruled the challenge, and he excepted. Having been convicted, he made a motion for a new trial on several grounds, among others that the verdict is contrary to law and without evidence to support it. The motion was overruled, and he excepted.

1. It appears from the evidence that in the county of Walton, in a room connected with a storehouse, there was constantly and notoriously carried on, contrary to the law, repeated sales of spirituous liquors. The method of procuring such liquors, on the part of the public, as detailed in the brief of evidence, was, that there was a hole in a partition large enough to put a bottle or a jug in it; that when a person went to that hole and knocked on the partition and put in his bottle or jug, together with a sum of money, the bottle or jug would in a very short time be returned and placed in front of the hole with such a quantity of liquor as the money deposited would pay for. This was done by some person in the room, and no opportunity was afforded to the person purchasing to see the face of the one who furnished the liquor. An exceedingly lax administration of the criminal law is shown in the fact that sales conducted in this manner were allowed to go on month after month, in open violation of the statute. The evidence shows that this place was habitually visited by people, was notorious, and was in effect but a clumsy concealment of the identity of the persons making such sales. As an instance, one person who visited the place for the purpose of purchasing liquor declared that he put in said hole forty-five cents and that there was given him in return but twenty-five cents worth of liquor, and that the person purchasing and the person selling stood there for a considerable length of time quarreling as to the amount of money which had been really deposited. But if the good citizens who are interested in the enforcement of law permit in their immediate locality such repeated violations to exist, it is their fault and their fault alone. The question which concerns us as a judicial tribunal is whether the defendant, who was convicted, was guilty under the evidence as it ap-

pears in the record.    He is clearly so, we think.    He freely and voluntarily at different times confessed that he had been staying at this place known as "the tiger," and that he received for his services there twenty dollars a month; that his contract bound him to stay until the first of April, and that he was employed there for the purpose of selling whisky.    This confession was corroborated by the evidence of more than one person, which showed him to have been repeatedly in the vicinity of this place of sale.    To one witness he stated that "the tiger" took in a lot of money, and to a question asked by this witness if he ever took in money there, he answered by bowing his head.    The defendant, according to another witness, rented certain land in the vicinity of "the tiger," on which to live and make a crop; but did not work the land a single day until April the first.    He was absent from his land every week until Sunday morning.    He told his landlord that he was engaged elsewhere in cutting cord wood.    When this was ascertained not to be true, and being accused of staying at "the tiger," he admitted it and promised that he would quit the first of April. It is proved by this witness that the defendant said he knew he had been fooling some people, but that he also knew that he had not been fooling the witness.    In addition to this evidence, it was shown by another person who testified for the State, that he knew the defendant well, had known him for fifteen or twenty years, that witness frequently bought liquor from "the tiger," that in making a purchase on one occasion he distinctly recognized the voice of the defendant.    So that, by his own voluntary confession amply corroborated, the defendant is guilty, and the conviction was in accordance with law and fully sustained by the evidence.

2. In addition to other grounds which appear in the motion, the plaintiff in error complains that a challenge which he made to the array of jurors was overruled by the court.    It appears that one Aycock was indicted for selling spirituous liquors, that the plaintiff in error was the sole witness for the State, and that after he had delivered his evidence the solicitor-general stated to the court that he would give the defendant a verdict of not guilty, but that the witness had sworn exactly

contrary in his evidence before the grand jury; and then proceeded to state to the judge in open court what the testimony was, which the witness, the plaintiff in error here, had given; and thereupon the court replied to the solicitor-general that there ought to be an investigation of the matter, as perjury goes to the root of all justice and undermines it, and instructed the solicitor-general to draw a bill against the witness for perjury and send it before the grand jury. All this transpired in open court and in the presence of the jurors who constituted the panel for the trial of misdemeanors. Immediately after these occurrences, the solicitor-general called up the case against the plaintiff in error; and it was then that his counsel made and filed a challenge to the array, on the ground that the statements and direction of the court, made in the presence of the panel of jurors, tended directly to the prejudice of the defendant and to discredit any statement which he might make in his own defense. It is now urged that the court committed error in overruling said challenge. It must be freely admitted that the remarks of the judge, and the direction which he gave to the solicitor-general, were sufficient to cause some prejudice, at least, on the part of the jurors against the good faith and integrity of the plaintiff in error; and if by a proper proceeding he had sought to test the fairness and impartiality of the jurors constituting the panel which had been put upon him and had been refused this privilege, we would, under the authority of previous rulings of this court, have sustained his right to purge the panel of all persons who were prejudiced against him. We are quite sure that the presiding judge was actuated by one motive and a single desire to suppress crime and enforce the law in the protection of society, when he openly directed the solicitor-general to prefer a bill of indictment against the plaintiff in error for perjury, assuming that the statements made to him were true. Yet, we ought not to refrain from calling attention to the fact that if a judge has any power to direct a bill of indictment to be laid before the grand jury, such direction should not be given in a manner which would be prejudicial to the witness in the minds of the persons who as jurors were then present in court and who might by

any probability be called to pass on his case. We might say, in passing, that as a general proposition we know of no legal authority which a presiding judge has, to give any direction whatever concerning the laying of a bill of indictment before the grand jury for their action. A bill of indictment does not originate either with the court, the solicitor-general, or with the grand jury themselves as a body. Such a bill can not go to the grand jury without the endorsement of a prosecutor, who in certain instances is liable for costs, and, for a want of good faith and probable cause, may be liable for damages, if the prosecution be malicious. If, for any reason in the opinion of the presiding judge, any matter in the interest of the public at large requires an investigation by the grand jury, it is perfectly within his power and prerogative to call that body before him and in open court give such instructions, in relation to their duty as to the investigation of any particular matter, as he may see proper and right, and the grand jury on their own motion, whether they are so charged or not, may investigate any supposed violation of law, and may after such investigation make a special presentment of any person who has been shown to have violated any of the penal laws.

As before said, we are perfectly assured that in what was said and done the presiding judge only desired and intended to have such investigation made as the interest of justice demanded; and while we can not agree with him that such action did not tend to invade any right of the defendant, we do agree with him that the challenge to the array of jurors should not have been sustained. Under section 972 of the Penal Code it is provided that the accused may, in writing, challenge the array for any cause going to show that it was not fairly or properly impaneled, or ought not to be put upon him; and under this provision it has been held that a challenge to the array must be on some ground which taints the whole body of the jurors. *Eberhart* v. *State*, 47 *Ga.* 598; *Dumas* v. *State*, 65 *Ga.* 475; *Blackman* v. *State*, 80 *Ga.* 785. There are, in the trial of criminal cases, two general divisions of challenges: challenges to the array, and challenges to the polls. The only ground of challenge to the array, at common law, was an ex-

ception to the whole of the panel because of the partiality or default of the sheriff, coroner, or other officer making the return. This form of challenge is also divided into two kinds, principal, and to the favor. A principal cause of challenge was based upon facts which produced such a manifest presumption of partiality, that, being conceded or proved to be true, the challenge must as a matter of law be allowed. The challenge to the favor, on the contrary, was grounded upon facts giving rise rather to a suspicion of partiality than to a positive presumption or belief. Thompson and Merriam on Juries, § 126. But it must be noted that, whether principal or to the favor, the challenge to the array is and must be on account of the partiality or defect of the officer summoning the jury. In practice, a challenge to the array is said by Bouvier, under the title "Challenge," to be that which applies "to all the jurors as arrayed or set in order by the officer upon the panel. Such a challenge is, in general, founded upon some error or manifest partiality committed in obtaining the panel, and which, from its nature, applies to all the jurors so obtained." By Mr. Clark in his Criminal Procedure, § 162, a challenge to the array is defined to be "an objection to all the jurors collectively, because of some defect in the panel as a whole." By Mr. Chitty in the first volume of his Criminal Law, 536, it is said that "Challenges for cause are of two kinds: 1st, to the whole array; 2d, to individual jurymen. To challenge the array is to except at once to all the jurors in the panel, on account of some original defect in making the return to the venire." In 1 Thompson on Trials, § 31, it is declared: "As the entire office of selecting the panel was, at common law, committed to the sheriff or other summoning officer, the usual ground of challenging the array under that system related to the partiality, 'unindifferency,' as it was called, or other disqualification of this officer." It is true that in the section of the code, supra, after the provision that the defendant may challenge the array for any cause going to show that it was not fairly or properly impaneled, there are the added words, "or ought not to be put upon him." But, from the very nature and character of a challenge to the array, it is evident that

such challenge questions the legality of the panel as organized, and for some cause which extends to the illegal arrangement of the jurors put upon him; and while in some of the books it may be found that a challenge to the array may be on account of favor, yet, as before stated, such favor extends not to the individual jurors but to the person summoning the same, from which it may be inferred that improper jurors were selected and impaneled;—and such is the ruling of this court. In the case of *Schnell* v. *State*, 92 *Ga.* 459, it was held that it was no cause of challenge to the array that twelve out of eighteen jurors had just served as a jury for the trial of another person indicted for a like offense growing out of the same transaction, and that if the challenge was good at all, it would not set aside the panel, but would be available only by challenges to the polls. A similar ruling was made in the case of *Jones* v. *State*, 90 *Ga.* 616. In the case of *Humphries* v. *State*, 100 *Ga.* 260, this court held, that a challenge to the array goes to the form and manner of making up the panel, without regard to the objections to the individual jurors which compose it; while the challenge to the polls is directed solely to an objection which is inherent in the individual juror; citing 80 *Ga.* 785.

Under the authority of these cases construing the words found in our Penal Code, it must be held that the challenge to the array was properly overruled. If, however, it be said that there should be some method of ascertaining the impartiality of jurors put upon the defendant in the trial for a misdemeanor, where he has reason to believe that any of the jurors put upon him are prejudiced, it may be replied that in the case of *Schnell*, supra, it was virtually held that the right to examine a juror upon his voir dire in a trial for a misdemeanor existed in the defendant. The ruling there was in terms that the challenge must be made before the juror is sworn, unless the cause of challenge be unknown until afterwards. In the case of *Wells* v. *State*, 102 *Ga.* 658, it was held that, under our constitution, every person accused of an offense against the laws of this State is entitled, when he demands it, to be tried by an impartial jury. It appeared that in the trial of that

case the commission of a misdemeanor was charged jointly against two persons. They were tried separately. One was convicted. In his statement, the person convicted implicated the other. When the second person was arraigned, the same jurors who had tried the case against the first were put upon him as part of the panel of twenty-four. To this panel he made a challenge to the polls, and not to the array, on the ground that the jurors put upon him had formed and expressed an opinion, and were, therefore, not impartial jurors; and the court was requested to put them upon their voir dire that their impartiality might be determined. There the court refused to do so. This court held that such refusal was error, and that the jurors should have been examined on their voir dire, in order that their impartiality might be determined. If any ground of challenge existed in this case, it was because the jurors were prejudiced against the defendant by the remarks of the judge and the solicitor-general made in open court. If in fact such jurors were not prejudiced, they were competent. In order to determine whether they were competent or not, a remedy was afforded, not by challenge to the array, but by challenge to the poll and each separate juror put upon his voir dire to ascertain his state of feeling toward the defendant before he assumed his public duty as a juror in the trial of the case. This was not done, and the partiality of the jurors was not questioned in any legal way; and it must therefore be held, in the absence of the exercise of his right by the defendant, that the jurors were competent.

Several other grounds of the motion assigned error in the rulings and charge of the trial judge. An examination of these grounds fails to disclose that any error requiring a reversal of the judgment was committed; and the judgment of the court in overruling the motion for new trial is

*Affirmed. All the Justices concurring.*