## TEAL *v.* THE STATE.

1. The refusal of a continuance is not cause for a new trial when the accused is not hurt thereby.
2. Challenge to the array is not the proper method of raising the question of the disqualification of individual jurors.
3. An indictment for simple larceny which charged the theft of " one horse of the female sex, said animal being a dark bay mare," was sufficiently specific as to the nature, character, and sex of the animal.
4. As to the ownership of the animal alleged to have been stolen, the evidence fully sustained the charge as laid in the indictment.
5. It was no cause for a new trial that the court charged as follows: "Now, if you find beyond a reasonable doubt from all the testimony submitted in the case, including the statement of the defendant—provided you see fit to give that statement any weight under the rules I have given you in charge." Standing alone, this incomplete sentence was harmless.
6. The alleged newly discovered evidence was merely cumulative.
7. The verdict was warranted by the evidence, and the court did not err in refusing a new trial.

Argued October 19,—Decided December 8, 1903.

Indictment for larceny. Before Judge Bartlett. Douglas superior court. June 23, 1903.

*J. S. James* and *Roberts & Hutcheson,* for plaintiff in error.
*W. K. Fielder, solicitor-general,* and *W. A. James,* contra.

FISH, P. J. Jordan Teal was convicted under an indictment charging him with simple larceny, viz., horse-stealing. Before trial he demurred to the indictment, and the demurrer was overruled. A new trial having been denied him, the case is here upon his bill of exceptions assigning error upon the overruling of the demurrer and the refusal of a new trial.

1. One of the grounds of the motion for a new trial was that the court erred in refusing to continue the case on the motion of the accused. It appears that E. H. Rice was an uncle of the accused and a material witness for him; that the accused desired Rice's assistance in conducting the defense; that Rice's wife's condition was such that his presence at home might be required at any minute; that Rice was in court when the case was called for trial, but desired to leave for home at once, on account of his wife's condition. The judge announced that he would not continue the case, but would arrange for Rice to be at home in the event he should be needed there. Rice remained at court during the trial,

aided the accused in conducting his defense, and testified as a witness in his behalf.    Under the circumstances, we fail to see how the accused was hurt by the refusal of the continuance.

2. The accused challenged the array of jurors put upon him, on the ground that nine of the panel of forty-eight (giving their names) were related either to the prosecutor or to himself within the prohibited degree ; and the challenge was overruled.    In the motion for a new trial error is assigned upon this ruling.    It is well settled that a challenge to the array is not the proper method of raising the question of the disqualification of individual jurors. Such a challenge goes only to the form and manner of making up the panel.    Penal Code, § 972.   If individual jurors are disqualified, objection should be made by challenge for cause.   Penal Code, § 973 ; *Humphreys* v. *State*, 100 *Ga*. 260 (2).

3.    The indictment charged the accused with stealing " one horse of the female sex, said animal being a dark bay mare, and having a white spot in her forehead, and about 12 years old, weighing about one thousand pounds, and commonly called by the name of Etta."    The accused specially demurred to the indictment, on the ground that it did not describe the animal alleged to have been stolen, " with sufficient certainty to put defendant upon notice of the nature, character, and sex" of the same; that it did not appear from the charge whether the animal was a mare of the horse, mule, or ass species.    This demurrer was overruled, and the accused excepted.    Our statute in reference to horse-stealing contains the following provisions :    " Horse-stealing shall be denominated simple larceny, and the term ' horse ' shall include mule and ass, and each animal of both sexes, and without regard to the alterations which may be made by artificial means."    Penal Code, § 156.    " The offense shall, in all cases, he charged as simple larceny, but the indictment shall designate the nature, character, and sex of the animal, and give some other description by which its identity may be ascertained."    Id. § 157.    In our opinion, this indictment sufficiently described " the nature, character, and sex " of the animal alleged to have been stolen.    The first clause of the description, " one horse of the female sex," clearly described the genus of the animal and its sex.    According to so much of the description, the animal alleged to have been stolen was of the horse kind and was a female.    Therefore, if the words

which immediately follow, viz., "said animal being a . . mare," are construed as not referring to a particular species of the genus horse, but as simply indicating a female of that genus, they are entirely superfluous, being but a repetition, in different language, of the description already given.     The fact that they immediately follow the clause which describes both the genus and the sex, shows that they were intended to make the description more definite.     They do make it more definite, by indicating the species of the animal alleged to have been stolen; for it is a matter of common knowledge and observation, that, among our people, the word "mare," when used without a word of qualification, is understood to mean a female of the horse species.     We apprehend that one rarely, if ever, hears the expression "a mare horse" employed to describe a female of the species horse, but that the term universally used, in this State, for this purpose is the single word "mare."     On the other hand, when a female of the species mule is intended, the expression used is "a mare mule;" and when a female of the species ass is meant, the word "jenny" is used.     We think the description in the indictment was amply sufficient to inform the accused that he was charged with having stolen a female of the species horse; and therefore the requirement of the statute, that "the indictment shall designate the nature, character, and sex of the animal," was complied with.

The plaintiff in error relies upon the decision rendered in *Brown's* case, 86 *Ga.* 633, where it was held: "An indictment for simple larceny, charging the theft of 'one dark bay horse with one white spot on the end of his nose and one small white spot in his forehead,' did not describe the property alleged to have been stolen, with the accuracy and fullness our statute requires, and a special demurrer thereto on this ground should have been sustained." We have carefully considered that case, before coming to a conclusion in this, and do not regard it as being at all in conflict with the decision which we now make.     In that case, Mr. Justice Lumpkin, referring to section 4394 of the Code of 1882, § 4394 (now Penal Code, §156), said: "The word 'horse,' as used in this section, is a generic term, which includes horse, as a species, mule and ass.     Horse, as a species, may again be subdivided into stallion, ridgling, gelding, and mare, and the same subdivision may be made as to mule and ass.     Colloquially, the word 'horse,'

among our people, usually means a male gelding of the horse species. So, if section 4394 was the only one with which we had to deal, it would be proper to sustain this indictment, on the idea that by it the defendant was sufficiently informed as to what kind of 'horse' he was charged with stealing; that is to say, he would understand the word 'horse' to mean what it usually does in every-day use and conversation." Certainly, up to this point in the opinion, there is nothing in conflict with what we have laid down above, but a distinct recognition of the principle that the established usage of a word among our people can be considered by this court in determining its meaning when used in an indictment. The learned Justice then proceeds to base the decision rendered upon the provisions of section 4395 of the Code of 1882 (now section 157 of the Penal Code), construed in connection with 4394, and says: "But the next section provides distinctly what indictments for this class of offenses shall contain, and declares that such indictments shall designate the nature, character, and sex of the animal, and also give some other description fixing its identity. The latter requirement of this section was complied with, in this case, by giving the color and flesh-marks of the animal, but we do not think the use of the word 'horse,' which has both a generic and a specific signification, distinctly recognized by our statute, was sufficient to give the defendant full and fair notice of the 'nature, character, and sex' of the animal, as the law evidently contemplated should be done." So, as we understand that decision, it means simply this, that as the word "horse" has both a generic and a specific signification, recognized by the statute, including in its generic meaning three different species of the equine family, and in its specific meaning including not only both sexes, but three recognized varieties and descriptions of the masculine sex, and as the statute expressly requires that the indictment shall designate the nature, character, and sex of the animal, the use of the word "horse" alone does not comply with this requirement, in that it fails to indicate, whether the "horse" intended is of the species horse, the species mule, or the species ass, and also fails to indicate its sex, and whether, if a male, it is a stallion, ridgling, or gelding. In the indictment now under consideration no such uncertainty as this exists. The animal is first described as "one horse of the female sex," that is, as

an animal belonging to the genus horse, and, therefore, the subject of the kind of larceny defined in the Penal Code, § 156, and also as a female animal of that kind.    Had the description in the indictment stopped here, the decision in *Brown's* case would have been directly in point, and the indictment, for the reasons there stated, would have been defective, because it failed to fully describe "the nature and character" of the animal.    But by the use of the words, "the same being a . . mare," the pleader, for the reasons stated above, descends from genus to species and confines the description to a female of the species horse; and there being among us no subdivisions of this sex as to horses, save, perhaps, as to age, which was not left uncertain in this case, the description was sufficient to indicate the nature and character of the animal.

4. Complaint was made in the motion for a new trial that there was a variance between the charge and the proof as to the ownership of the animal alleged to have been stolen.    The indictment charged that the animal was the property of the prosecutor, Joel S. McGuire.    Upon the trial McGuire testified that the animal belonged to him ; that he purchased it, two years previously, from his mother and paid her for it ; that it was given to his mother in a proceeding for alimony ; and that it was in his possession, as his property, at the time it was stolen.    We fail to find anything to the contrary in the brief of evidence, and therefore the complaint made was entirely without merit. · See *Gilbert* v. *State*, 116 *Ga.* 819, and authorities cited.

5. We do not understand how the accused could have any just ground of complaint of the extract from the charge quoted in the fifth headnote.    It is evidently only a part of a sentence, and is meaningless in its segregated condition.

6. The ground of the motion based on alleged newly discovered evidence was without merit.    The defense set up by the accused was alibi.    The evidence in behalf of the State was to the effect that the theft occurred about seven, or half past seven, o'clock on the evening of January 7, 1903 ; that the animal was stolen from White Smith's, where the prosecutor had her, which was about a mile from Winston towards Douglasville, in Douglas county. Emanuel H. Rice testified, in behalf of the accused, that he left Villa Rica, in Douglas county, with the accused on the afternoon

of January 7, 1903, at about half an hour by sun, for Atlanta ; that they traveled in a buggy drawn by a mule, and reached Atlanta next morning about an hour by sun, and that the accused was with the witness on this trip from the time they left Villa Rica until they reached Atlanta; that, in going to Atlanta from Villa Rica, they went by Winston, and passed White Smith's house about seven or eight o'clock that night. The statement of the accused was substantially to the same effect. The alleged newly discovered evidence was contained in an affidavit made by J. H. Vaughn, to the effect, that on the night in question, just after dark, he met Rice and the accused in the road between White Smith's and Douglasville, going in the direction of the latter place ; that they were riding in a buggy drawn by a mule, and had no other animal with them ; that he was well acquainted with both, and spoke to them on that occasion, but did not know whether they recognized him or not. It is manifest that this testimony of Vaughn was merely cumulative of the testimony of Rice and the statement of the accused, as it simply tended to put the accused with Rice at the time and place they claimed on the trial he was ; and it will be noted that this time and place were about the same as the time and place the State contended the theft was committed. It will be readily observed that this is an entirely different case from that of *Fellows* v. *State*, 114 *Ga.* 233, where it was held, that "where in a criminal trial the defense was alibi, and the accused introduced witnesses who testified that on the day of the commission of the crime they saw the accused in a county other than that in which it was perpetrated, he being on that day, according to the testimony of some of them, at one place in the county to which their testimony related, and, according to the testimony of others of them, at other places therein, and, according to the testimony of all, too far from the scene of the offense to have been possibly present at the time of its perpetration, newly discovered testimony of still another witness, which placed the accused, in the county where the other witnesses located him on the day in question, at a different hour and place from any testified to by them, is not merely cumulative, though it of course tended, like the other testimony, to establish the truth of the defense of alibi."

7. The evidence fully warranted the verdict of guilty, and the court did not err in overruling the motion for a new trial.

<em>Judgment affirmed.　　All the Justices concur.</em>