## ATLANTIC COAST LINE RAILROAD CO. *v.* O'NEILL.

```
127    685
 Case 2
128     77
```

1. The objections to the petition, urged in the special demurrer, were fully met by the amendments, and, as against the general demurrer, the petition set forth a cause of action.
2. When the evidence is conflicting as to whether a particular thing did or did not occur, and the trial judge instructs the jury that the existence of a fact testified to by one positive witness is rather to be believed than that such fact did not exist because many witnesses who had the same opportunity of observation swear that they did not see or know of its having transpired, he should also give instructions to the effect that in weighing the testimony of the witnesses the jury should pass upon their credibility.
3. The instructions of the judge, other than that dealt with in the preceding note, which were the subject of assignments of error, were not erroneous for any reason assigned.

Submitted July 18, 1906.—Decided February 16, 1907.

Certiorari. Before Judge Mitchell. Berrien superior court. September 25, 1905.

O'Neill sued the railroad company, in the city court of Tifton, alleging: He was superintendent of a lumber company which, on the date named, operated in Tifton, on the north side of the defendant's track, a planing-mill. Between the "planing-mill and dry kiln, and a timber-dressing plant and skids connected therewith," there was a side-track. The track was within four or five feet of these structures. When cars loaded with lumber or timber were brought to Tifton over the road of defendant for the lumber company, they were brought by the switch-engine into the side-track, and placed at such points "as were directed by plaintiff," it being his duty to direct the employees of defendant as to the

points where such cars should be placed for convenience in loading and unloading. On the day named the switch-engine brought into the side-track three flat-cars loaded with rough lumber, and came to a standstill when the first car reached a point opposite the planing-mill, awaiting instructions of the plaintiff as to where the cars should be placed.. A few feet west of the west car two flat-cars stood on the side-track, loaded with dressed lumber, and within a few inches of each other, uncoupled. Upon one of these cars (the furthest from the switch-engine) stood the defendant's yardmaster, who, for the defendant, superintended the placing of cars when directions had been given in regard thereto by the plaintiff. While the car last mentioned was standing still, plaintiff, at the invitation of the yardmaster, who was on said car, went upon it for the purpose of directing him as to the point where the three cars of rough lumber should be placed. While standing upon the car with the yardmaster and directing him as to the points where the cars should be placed, the switch-engineer, knowing plaintiff's position upon the car, without any necessity therefor and without warning, suddenly and violently put the engine and cars in motion, thereby striking the car next to the one upon which plaintiff was standing, which in turn struck the car upon which plaintiff and the yardmaster were standing a violent blow, precipitating the car along the siding and down a steep grade, about three car-lengths, where it came in contact with other cars standing on the siding. When the car upon which plaintiff was standing came in contact with the other cars, it came violently and suddenly to a stop, and that part of the lumber upon which his left foot rested was precipitated suddenly forward, while that part upon which his right foot rested remained stationary. His left foot and leg were thus carried forward suddenly and violently, and his left knee-joint was twisted and dislocated, and the tendons and muscles of his knee and leg were strained and ruptured. The injury is permanent, and by reason thereof his earning capacity has been permanently impaired to the extent of three fourths. As a result of said injury, he has suffered and will always suffer great mental and physical pain. The injury was not due to any fault on his part, nor was it inflicted with his consent. It occurred while he was in the exercise of ordinary and reasonable care and diligence, looking to his own safety, and was occasioned solely by

the negligence and carelessness of the switch-engineer of the defendant in striking the car upon which the plaintiff was standing, in the manner described. At the time of the injury plaintiff was 53 years old, in sound health, capable of earning by his labor, largely physical, $125 per month; and his earning capacity would have increased during the remainder of his life had it not been for said injury. At the time of the injury he had a reasonable expectancy of 20 years. Damages are laid in the sum of $15,000, and process is prayed.

To this petition the defendant filed a general demurrer, and also a special demurrer upon the grounds, that the petition fails to set forth the injury alleged, or what muscles and tendons were ruptured and strained, or what was the particular character of the injury alleged to have been permanent, or the character of the labor, the ability to do which is alleged to have been impaired, or the character of the alleged physical labor the value of which it is alleged would increase as he became older, and which was impaired to the extent of three fourths by the injuries to the muscles of his left leg. The plaintiff filed an amendment to the petition, in which he alleged, that, as a result of the injury, he "sustained a traumatic laceration of the internal lateral ligament of the knee-joint, resulting directly in marked synovitis, with effusion into the knee-joint, attended with swelling and pain;" that the "injury is a permanent impairment of his power of locomotion and general physical activity, with which impairment his experience, training, capacity, and efficiency in his profession as a planing and sawmill superintendent, and as a manager and director of labor generally, is rendered proportionately less valuable to him as a means of earning a living;" and that his earning capacity was that of a "planing and sawmill superintendent and . . superintendent and director of labor generally." This amendment was allowed, and the demurrer was overruled. The case proceeded to trial before a jury, and resulted in a verdict in favor of the plaintiff. The case was carried to the superior court by certiorari, the petition for certiorari assigning error upon the overruling of the demurrer, and upon the verdict and judgment as being contrary to law and without evidence to support them, and upon various extracts from the charge of the court. The certiorari was overruled, and the defendant excepted.

*Kay, Bennet & Conyers* and *John Murrow,* for plaintiff in error..
*Murrow & Pate* and *Toomer & Reynolds,* contra.

COBB, P. J.   (After stating the facts.)   1. The amendment to
the petition sufficiently met the objections raised in the special
demurrer, and therefore it only becomes necessary to determine
whether, as amended, the petition set forth a cause of action as
against the general demurrer.   According to the averments of
the petition the plaintiff was on the car of the defendant in the
discharge of a duty which he owed to his employer in connection
with a transaction with the railroad company, where he repre-
sented his employer.   In addition to this it is distinctly averred
that he was invited by the yardmaster, who was in control of the
yard and the cars, to take the position he did upon the car where
the yardmaster was himself standing.   Under such circumstances
the railroad company certainly owed to the plaintiff the duty of
exercising ordinary care and diligence for his safety, and the
plaintiff had a right to assume that this duty would be discharged.
Even if under ordinary circumstances the plaintiff should not
have taken his position upon one of the cars of the defendant in
its yard, and so doing would have been at his peril, the invitation
of the yardmaster, the agent of the railroad company in charge of
its business in connection with the transaction in which both the
plaintiff's employer and the railroad company were interested,
and when the plaintiff was representing his employer on the occa-
sion in question, authorized him to go upon the car when there was
nothing in the circumstances indicating peril in such course.   The
conduct of the switch-engineer was, according to the averments of
the petition, certainly negligent.   As against the general demurrer
there can be but little question that the petition set forth a cause
of action.

2. Complaint is made of the following charge of the court:
"The existence of a fact testified to by one positive witness is to
be believed rather than that such fact did not exist because many
witnesses who had the same opportunity of observation swear that
they did not see or know of its having transpired.   This rule does
not apply when, two parties having equal facilities for seeing or
hearing a thing, one swears that it occurred, and the other that it
did not."   Error is assigned upon this charge for several reasons,
among them being that there was no evidence to authorize it, and

therefore it was calculated to mislead the jury, and that the court did not qualify it by further instructions that the rule did not apply unless other things were equal and the witnesses were of equal credibility. The charge was certainly subject to the criticism that it lacked the qualification just referred to. It has been repeatedly held that it was error to charge, without qualification, that positive evidence is stronger than negative, or to use, in a charge, language to that effect. *Warrick* v. *Slate,* 125 *Ga.* 133 (8). In the case just cited Mr. Justice Lumpkin was dealing with an assignment of error identical with that now under consideration, and closed his discussion of the subject with the following apt and pointed remark: "The rule does not mean that the witness must be credited, regardless of anything else, if he swears positively. If so, hard swearing would necessarily import truth." We think the objection that there was no evidence upon which to base the charge was also well founded. The question as to whether the plaintiff was invited to go upon the car by the yardmaster was one which became important and vital. The plaintiff and another witness testified positively that the yardmaster beckoned to plaintiff to come upon the car. The yardmaster denied that he invited plaintiff upon the car, or did any act which could be properly construed into such an invitation. Such a state of affairs does not develop negative evidence of any character. All of the witnesses are positive. Some testify positively that a transaction of a given character did take place; the others testify that the transaction in question did not take place. See, in this connection, *Humphries* v. *State,* 100 *Ga.* 262 (3). But it may be said that the judge added to his instructions that the rule that he had just laid down did not apply where both witnesses swore positively. The vice in the charge is that it did not have the proper qualification as to the credibility of the witnesses. But even if it had been qualified in this way, the charge would have been confusing and misleading to the jury; calculated to leave the impression upon their minds that that which was positive evidence was merely negative in its character. We think the error committed in these instructions is of such prejudicial character as to require a reversal of the judgment.

3. There is no merit in the assignments of error upon those extracts from the charge which merely contain the substance of the

different sections of the code declaring what are general, direct, and consequential damages. There does not seem to be any error, as against the defendant, in the instructions complained of which declared that it is the duty of a party imperiled by another's negligence, where two ways of conduct are open, one safe and the other manifestly dangerous, to adopt that course which is safe. We reverse the judgment solely upon the instruction first dealt with; and, as a new trial is to be had, we do not express any opinion on the evidence.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*