## 22191. HUFF v. THE STATE.

Decided April 30, 1932.

*Joel Cloud*, for plaintiff in error.

*E. P. Shull*, solicitor, *Hamilton McWhorter*, *Paul Brown*, *T. R. Watkins Jr.*, contra.

Luke, J. Ed Huff was convicted of buying seed-cotton after sunset and before sunrise. His exception here is to the judgment overruling his motion for a new trial.

The gist of the first question to be determined is whether the trial judge erred in overruling the defendant's written challenge to the array, based on the ground that the sheriff, who was the prosecutor in the case, "summoned four talesmen . . to fill the panel originally drawn for said August term, said sheriff knowing that said case would stand for trial at said term." In order that the position of counsel for the plaintiff in error may be better understood, we quote as follows from his brief: "The gravamen of this exception is that the jury was improperly and illegally empanelled, for the reason that the talesmen that were summoned to complete the panel were summoned by the sheriff, who . . was the prosecutor and very deeply interested in the conviction of the plaintiff in error."

Aside from the fact that it clearly appears from said motion that the plaintiff in error sought to disqualify the entire panel because of the alleged disqualification of some of the individual jurors, it may not be amiss to say that the bill of exceptions avers that "the defendant filed a written challenge to the array, objecting and excepting to the panel of jurors;" that the motion itself recites that the defendant "enters this his challenge to the array, . . for that said jury . . was not properly empanelled;" and that, in his brief, counsel uses this language: "Conceding that a challenge to the array need be to the whole panel, plaintiff in error contends that the written exceptions filed in the instant case are to the whole .

panel." The premises considered, it would appear to be only necessary to quote from *Bryan* v. *State,* 124 *Ga.* 79, 80 (52 S. E. 298), the following apt statement of a well-seasoned rule of law: "A challenge to the array is an objection to all the jurors collectively, because of some defect in the panel as a whole. If some of the jurors included in the panel are not impartial, this can not be properly reached by a challenge to the array, but by challenge to the polls." We quote also the first sentence of headnote 2 of the decision in *Blackman* v. *State,* 80 *Ga.* 785 (7 S. E. 626): "A challenge confined to four jurors is not broad enough to vitiate the array, even though otherwise good." See also *Thompson* v. *State,* 109 *Ga.* 272 (34 S. E. 579); *Coleman* v. *State,* 141 *Ga.* 731 (82 S. E. 228); *Jones* v. *State,* 90 *Ga.* 616 (16 S. E. 380); *Thompson* v. *Buice,* 162 *Ga.* 556 (134 S. E. 303). Therefore we hold that the court properly overruled said motion.

One negro witness swore that on several occasions, at about ten o'clock at night, he and several other negroes carried away in sheets large quantities of seed-cotton belonging to T. E. Watkins, the prosecutor in the case, and sold the same to the defendant. Another negro, who participated in the illegal enterprise, testified substantially as did the first witness. The accusation charges that the offense occurred on November 29, 1930. T. E. Watkins swore that in 1930 he ran twenty plows and made two hundred and ninety-six bales of cotton, and that he lost about thirty bales of cotton in that year. It is true that there were some discrepancies in the testimony of the two negro witnesses; that several witnesses swore that they would not believe those witnesses under oath; that many witnesses testified that the defendant was a man of good character; and that the defendant flatly denied the charge against him, averring that all the cotton he had or sold was made by him on a large plantation conducted by him. The jury being the exclusive judges of the credibility of witnesses and the weight of evidence, and the verdict having the approval of the trial judge, this court has no other alternative than to let the verdict stand, in so far as the general grounds are concerned.

Special ground 1 complains that the court erred in refusing to grant a mistrial because the prosecutor, while testifying on cross-examination, volunteered the following remark: "I am satisfied that Ed Huff got my cotton." The court promptly ruled out said

statement and instructed the jury not to consider it. It also appears, from the note of the trial judge in reference to this ground, that he later charged the jury that said statement was "inadmissible, and improper evidence," and that they should entirely disregard it. We are of the opinion that any possible harmful effect of the statement of the witness was eradicated, and that the court's refusal to declare a mistrial was not error.

Special ground 2 avers that the court erred in failing to declare a mistrial because one of State's counsel used the following language in addressing the jury: "This county is purely an agricultural county, with cotton as the main money crop, and therefore the offense of buying seed-cotton at night is one of the worst offenses." It is hardly supposable that there was any person on the jury who was not aware of the fact that Oglethorpe is "an agricultural county, with cotton as the main money crop." Indeed, the ground itself states that "agriculture is practically all of the business of the county." Moreover, we are inclined to believe that there was evidence tending to support counsel's statement to that effect. Certainly, counsel's conclusion that the offense charged "is one of the worst offenses" could hardly be classed as a statement so uncalled for and so inflammatory as to warrant the grant of a mistrial. Our conclusion is that the court did not commit reversible error in failing to rebuke counsel or grant a mistrial.

It is insisted in special ground 3 that a new trial should be granted because, "after the verdict was rendered in said case, and on same date," a juror who sat on the case, upon being asked "how he stood," replied: "I had to go with the crowd." We do not think that the remark alleged to have been made by the juror, at the time and under the circumstances set out in the ground, would be cause for a new trial in any event; and where, as in this case, the juror made an affidavit pointedly denying the statement attributed to him by the affidavits of two persons who claimed to have heard it, the ground is certainly without merit.

. Our conclusion is that the trial judge did not err in refusing to grant a new trial for any reason assigned in the record.

*Judgment affirmed. Broyles, C. J., and Jenkins, P. J., concur.*