## 55798. LINGERFELT v. THE STATE.

BANKE, Judge.

The appellant appeals his convictions for burglary, rape, aggravated sodomy, and armed robbery.

The victim testified that she awoke early one morning to find a man kneeling beside her bed with a knife. He ripped off her nightgown, blindfolded her, raped and sodomized her, and took a small sum of cash from her before leaving. She stated that she had an unobstructed view of the assailant for approximately three minutes prior to being blindfolded and that she was also able to glimpse his face for a few seconds from under the blindfold.

After the assailant had departed, the victim left her house and drove around for a while trying to decide whether she should tell anyone what had occurred. She testified that she went to a friend's residence at about 11:00 or 12:00 that morning and told him what had happened. At about 3:00 that afternoon she saw her husband (from whom she was separated) and told him what had happened, giving him a description of the assailant. He in turn went to a nearby hardware store, where he called the police. He also related the description of the assailant to certain persons at the store and was offered the name of the appellant as a person who matched that description. Later that day, a neighbor showed the victim a photograph of the appellant which was contained in an old school yearbook.

A day or two later, the victim went to the sheriff's office where she picked the appellant's photograph out of a display containing photographs of seven different

persons. Although the deputy who prepared the display testified that he had chosen the photographs of the other persons on the basis of their similarity in appearance to the appellant, the appellant was the only one of the seven who appeared without a shirt. There was apparently no necessity for this, since the photograph had been taken that same morning, shortly after the appellant's arrest, and the appellant had been wearing a shirt when arrested.

Also present at the photographic lineup was a Mrs. Dahlrymple, whose neighboring home the appellant had attempted to break into about a month earlier. Mrs. Dahlrymple picked the appellant's picture out of the photographic display in the presence of the victim and prior to the latter's having made her selection. However, the victim testified that she did not observe what choice Mrs. Dahlrymple had made, and this was corroborated by the testimony of the deputy. The deputy also stated that he was unaware that the victim had previously viewed the photograph of the appellant in the school yearbook.

During jury selection, a prospective juror stated on voir dire that he had heard too much information about the case to be impartial. The trial judge questioned him extensively in the presence of the rest of the panel as to what he had heard and from whom. In response, the prospective juror named several persons known to him who claimed that the defendant was a peeping tom. The defense immediately moved for a mistrial. *Held:*

1. The statements made by the prospective juror in the presence of the remainder of the panel were prejudicial and entitled the appellant to a new panel. Had the juror said nothing more than that he heard too much about the defendant to be impartial, disqualification of the remainder of the panel would not have been necessary. See *Coates v. State,* 165 Ga. 191 (140 SE 287) (1927). However, the responses subsequently elicited from him went far beyond this and constituted improper testimony which branded the accused as a sex deviate before the trial had even begun. An instruction to the remainder of the panel to disregard these comments could not have been sufficient to erase the potential harm done.

The state argues that no error was committed

because the defense did not make a proper motion to secure a new jury panel. It is true that since a jury had not yet been impaneled and sworn to try the case, the motion for mistrial was premature. See *Ferguson v. State,* 219 Ga. 33 (3) (131 SE2d 538) (1963). The proper procedural tool for the defense to have used was either a "challenge to the poll" (see *Thompson v. State,* 109 Ga. 272 (2) (34 SE 579) (1899); *Hill v. State,* 221 Ga. 65 (1, 2) (142 SE2d 909) (1965); *Hagans v. State,* 77 Ga. App. 513 (48 SE2d 700) (1948)) or a motion for a postponement to impanel other jurors who had not heard the remark (see *Perdue v. State,* 135 Ga. 277 (1) (69 SE 184) (1910); *Ferguson v. State,* 219 Ga. 33 (3), supra.) However, regardless of the label which defense counsel placed on his motion, his import was clear, i.e., that the prospective jurors had been prejudiced by the remarks and that the appellant was entitled to a new panel from which to choose a jury to hear his case.

"[T]here is no magic in mere nomenclature, even in describing pleadings. *Girtman v. Girtman,* 191 Ga. 173 (4) (11 SE2d 782). Under our rules of pleading substance, not mere nomenclature, controls. *McDonald v. State,* 222 Ga. 596 (1) (151 SE2d 121)." *Marshall v. State,* 229 Ga. 841 (1) (195 SE2d 12) (1972). See *Coaxum v. State,* 146 Ga. App. 370 (1) (1978). Thus, where the relief sought in a *motion* is clear and it is shown that the accused is entitled to the relief, it is error to deny it on the basis of a mere defect in nomenclature.

Although in *Ferguson v. State,* 219 Ga. 33 (3), supra, a motion for mistrial was held to be an improper method of challenging the impartiality of the jury panel due to improprieties in the voir dire process, the remark objected to in that case was merely an unanswered question by the prosecutor which contained no prejudicial allegations concerning the accused's character or past conduct. In contrast, we are dealing here with a statement made by a prospective juror, under oath, that several named persons in the community had accused the appellant of being a peeping tom, persons who were never called into court to confront the appellant during his trial. This was *inherently* prejudicial and deprived the appellant of his right to begin his trial with a jury "free from even a suspicion of prejudgment or fixed opinion, . . . [a]nd this is

true although the challenged jurors qualified by their answers to the usual questions propounded." *Edwards v. Griner,* 42 Ga. App. 282 (1) (155 SE 789) (1930), citing *Smith v. State,* 16 Ga. App. 299 (1) (85 SE 207) (1915). Under the circumstances of this case, it was error for the trial judge to proceed with the selection of the jury in the face of defense counsel's motion.

2. Prior to trial the appellant moved to suppress the victim's identification testimony, contending that the manner in which the photographic lineup was conducted was so unnecessarily suggestive as to give rise to a substantial likelihood of irreparable mistaken identification. See generally, Simmons v. United States, 390 U. S. 377, 387 (88 SC 967, 19 LE2d 1247) (1968); Neil v. Biggers, 409 U. S. 188, 198-200 (93 SC 375, 34 LE2d 401) (1972); *Payne v. State,* 233 Ga. 294, 299-301 (210 SE2d 775) (1974); *Fleming v. State,* 236 Ga. 434, 436-437 (224 SE2d 15) (1976). In particular, the appellant points out that the other witness, Mrs. Dahlrymple, was allowed to identify his photograph in the victim's presence, that the victim had already seen his yearbook picture, and that he was the only subject in the display to be photographed without a shirt.

As has been stated previously, the victim denied that she had observed the choice made by Mrs. Dahlrymple. From this as well as from other testimony on the issue, the trial judge was authorized to conclude that Mrs. Dahlrymple's presence at the lineup did not influence the victim's choice in any way. With regard to the victim's having viewed the appellant's yearbook picture, the record shows that the police had no involvement whatsoever in this. Thus, it cannot be said that his due process rights were violated. Furthermore, the victim testified that the appellant did not resemble his yearbook picture, which was taken when he was only about 12 years old. Having viewed both the yearbook photo and the lineup photo, we agree that there is little resemblance and conclude that the former was not suggestive of the latter.

The fact that the appellant was the only person to appear in the photographic display without a shirt creates a much more serious problem. It cannot be denied that this rendered the display suggestive, nor can it be denied

that this suggestiveness was gratuitous and unnecessary. However, considering the totality of the circumstances, we do not believe that a substantial likelihood of irreparable misidentification resulted. In the first place, the victim testified that her assailant had worn a shirt when he assaulted her, so his appearance without a shirt in the photograph did not necessarily label him as the rapist, even though it did cause him to stand out in the display. Furthermore, it appears that the victim was able to give a detailed description of her assailant to the police and that it was in fact this description that led to the appellant's arrest. Only a day or two had elapsed since she had been assaulted, and she chose the photograph after observing the display for less than a minute. Considering "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation," the criteria set forth in Neil v. Biggers, 409 U. S. at 199-200, supra, we hold that the trial judge was authorized to find the photographic identification reliable even though the procedure used was suggestive.

The appellant's contention that he was entitled to be represented by counsel at the photographic lineup (at which he was not present) is also without merit. See *Dodd v. State*, 236 Ga. 572, 574 (224 SE2d 408) (1976).

It was not error to deny the motion to suppress identification testimony.

3. The evidence amply supported the verdict. The victim's testimony that she had been raped was corroborated by her torn nightgown, which was introduced into evidence, and by her reasonably prompt report of the incident on the same day. There was also evidence showing that a window had been pried open. "The quantum of corroboration needed in a rape case . . . is not that which is in itself sufficient to convict but only that amount of independent evidence which tends to prove the incident occurred as alleged. [Cits.] Slight circumstances may be sufficient corroboration, and ultimately the question is one for the jury. [Cit.] If there is any

corroborating evidence we will not go behind the jury and pass upon its probative value. [Cits.]" *Putman v. State,* 143 Ga. App. 248 (237 SE2d 713) (1977).

4. It was not an abuse of discretion to deny a mistrial because the victim became emotional and cried while recounting the details of her ordeal. See *Avery v. State,* 209 Ga. 116 (5), 126-128 (70 SE2d 716) (1952). Accord, *Associated Distributors v. Strozier,* 144 Ga. App. 205 (1) (c) (240 SE2d 761) (1977).

5. It was not error to allow the victim's neighbor, Mrs. Dahlrymple, to testify that she had encountered the appellant attempting to break into her house through a window a few weeks prior to the attack for which he was on trial. "It is well settled in rape cases that proof of similar offenses committed by the accused in the same locality, about the same time, and where similar methods were employed by the accused in commission of such offenses, is admissible in his trial for the purpose of identifying the defendant as the guilty party and to show motive, plan, scheme, bent of mind, and course of conduct. [Cits.] There must be some logical connection between the crimes from which proof of one would tend to establish proof of the other." *Burnett v. State,* 234 Ga. 741, 744 (218 SE2d 4) (1975).

Both offenses under consideration here occurred early in the morning, and both involved young mothers who lived in the same neighborhood and whose husbands were regularly absent from home. Although the appellant did not assault Mrs. Dahlrymple, this does not necessarily mean that he had no intent to do so, since it appears that she was able immediately to scare him away by calling for her husband (who was not at home) to get his gun. Accord, *Bloodworth v. State,* 233 Ga. 589 (3) (212 SE2d 774) (1975). We find a sufficient similarity between the two incidents to render Mrs. Dahlrymple's testimony admissible. See also *Hicks v. State,* 232 Ga. 393, 396-397 (207 SE2d 30) (1974); *Payne v. State,* 233 Ga. 294, 311-314, supra; *Burnett v. State,* supra.

6. The court's charge on the consideration to be given to the evidence of the prior offense constituted a correct statement of the law and was not erroneous. See *Payne v. State,* 233 Ga. 294, 313-314, supra.

7. The court's charge on alibi was not burden-shifting and was not otherwise erroneous. See *Jordan v. State*, 235 Ga. 732 (8) (222 SE2d 23) (1975).

8. In the absence of a timely objection, it was not error to allow the investigating officer to remain in the courtroom and to hear the testimony of other witnesses before testifying himself, despite the fact that the rule of sequestration had been invoked. See generally *Tift v. State*, 133 Ga. App. 455 (1) (211 SE2d 409)(1974); *Whitfield v. State*, 143 Ga. App. 779 (2) (240 SE2d 189) (1977); *James v. State*, 143 Ga. App. 696 (2) (240 SE2d 149) (1977).

9. Fingerprints were lifted from the victim's nightstand next to her bed and were later determined by the State Crime Laboratory *not* to have been left by the appellant. The State Crime Laboratory requested the sheriff's department to furnish the victim's prints for elimination purposes, but the sheriff's department neglected to comply with this request.

Prior to trial the defense filed a Brady motion to compel the state to produce evidence in its possession favorable to the accused. The appellant now asserts as error the trial court's refusal to grant a new trial based on the state's failure to disclose the sheriff department's failure to comply with the request for the elimination prints.

This enumeration of error is without merit. Although the state is obligated upon request to disclose material evidence in its possession favorable to the accused (see Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215); Moore v. Illinois, 408 U. S. 786 (92 SC 2562, 33 LE2d 706); *Rini v. State*, 235 Ga. 60 (1) (218 SE2d 811) (1975)), the state cannot be required to disclose something which it does not know. See *State v. Haynie*, 240 Ga. 866, 868 (242 SE2d 713) (1978). Furthermore, even had the victim's prints been sent to the crime lab and even had they been shown not to match those lifted from the nightstand, this would not in and of itself have resulted in material evidence favorable to the accused since it is by no means clear that the rapist and the victim were the only two persons with access to the nightstand. "The mere possibility that an item of undisclosed information might

have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." United States v. Agurs, 427 U. S. 97, 109 (96 SC 2392, 49 LE2d 343) (1976).

In making this ruling, we render no opinion on whether the defense is entitled to obtain by filing a motion to produce directed against the state copies of either the victim's fingerprints or of the prints left on the nightstand. See generally Code Ann. § 38-801 (g) (Ga. L. 1966, p. 502; 1968, pp. 434, 435; 1968, p. 1200); *Brown v. State,* 238 Ga. 98 (231 SE2d 65) (1976); *State v. Haynie,* 240 Ga. 866, supra. See also *Patterson v. State,* 238 Ga. 204 (232 SE2d 233) (1977).

*Judgment reversed. Deen, P. J., and Smith, J., concur.*

ARGUED MAY 1, 1978 — DECIDED SEPTEMBER 11, 1978 — REHEARING DENIED SEPTEMBER 21 AND OCTOBER 5, 1978 —

*William Ralph Hill, Jr.,* for appellant.

*William M. Campbell, District Attorney, Bruce Hinshelwood, Craig Gillen, Assistant District Attorneys,* for appellee.