## 71235. SCOTT v. THE STATE.
### (339 SE2d 718)

DEEN, Presiding Judge.

Richard Lee Scott was convicted of four counts of kidnapping, two counts of armed robbery, one count of aggravated assault and two counts of burglary. He appeals following the denial of his motion for a new trial.

1. Scott first contends that the trial court erred in not granting his motion for the appointment of a psychiatrist, as mandated in *Ake v. Oklahoma*, 470 U. S. ___ (105 SC 1087, 84 LE2d 53) (1985), a case decided approximately two weeks after his trial.

In *Ake*, the court held that "[w]hen a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must . . . assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." Id. at 84 LE2d at 66.

Scott filed his motion two days prior to trial. At the hearing on the motion, his attorney did not attempt to make a showing that his mental state at the time he committed the offenses in question would be a significant factor in his defense. He merely sought to show that an examination conducted by Dr. Grigsby, a psychologist and Chief of Forensic Services at West Georgia Regional Hospital, could be biased since he worked for the state, and that Scott should be granted the funds to hire an independent psychiatrist to examine him.

Shortly after Scott's arrest and return to Troup County, his counsel entered into a stipulation with the District Attorney's office to obtain a psychiatric examination, and the court entered an order requiring the psychiatric examination to be conducted at a facility designated by the Department of Human Resources "for purposes of observation, examination, and evaluation of his mental condition and competency to stand trial . . . and of his mental competency to distinguish between right and wrong at the time of the alleged offenses."

Appellant was tested by Dr. Grigsby, and the psychologist's report was filed with the court. Dr. Grigsby stated that the defendant had a history of mental problems, a very vague sense of paranoia, and

several character and personality disorders, but that he was competent to stand trial and was legally accountable for his actions at the time of the offenses, as he knew right from wrong and there was no evidence of a delusional compulsion. At trial Scott chose to represent himself assisted by two attorneys and called Dr. Grigsby as a witness for the defense. Dr. Grigsby testified that Scott did not suffer from mental illness, but had a character disorder in that he was "a pain to other people." He testified that he examined Scott's service records and learned that the visits to psychiatrists while in the Navy were mainly for marital and occupational problems, and that upon his discharge, Scott was diagnosed as paranoid and having occupational problems.

A review of the hearing transcript indicates that Scott was hoping that an independent examination would turn up something that would enable him to raise the insanity defense at trial. The holding in *Ake*, however, does not require the appointment of a psychiatrist so the defense can go on a fishing expedition. It requires the defendant to make a preliminary showing that his sanity at the time of the offenses in question would be a significant factor at trial. There was no evidence presented to show that Scott had ever been insane or severely mentally disturbed, and counsel did not offer to show the court why the appointment of an independent psychiatrist would be helpful to the accused other than the assertion that Dr. Grigsby was biased. In *Ake*, the defendant's behavior at arraignment was so bizarre that the judge *sua sponte* ordered a psychiatric examination, and the state psychiatrist found him incompetent to stand trial and suggested that he be committed. When the defendant was finally found to be competent to stand trial, it was only on the condition that he be sedated with powerful drugs three times a day. The psychiatrists who examined him described the severity of his mental illness less than six months after the offense and suggested that the illness might have begun many years earlier. The court also noted that Oklahoma recognized an insanity defense under which the defendant has the initial burden of producing evidence. In the instant case, the trial court's order requiring the defendant to undergo psychiatric examination has little significance in determining whether Scott has made the requisite preliminary showing because it was issued as a result of a stipulation between the defendant and the state. No other factors to indicate the presence of mental illness in the defendant were brought before the court.

In *Lindsey v. State*, 254 Ga. 444, 449 (330 SE2d 563) (1985), the court, on motion for rehearing, set out guidelines to assist the trial court in determining whether an indigent defendant has made a preliminary showing. The court held that it can even consider such things as a defendant's out-of-court statements in determining

whether the defendant has made a showing that his sanity is likely to be a significant factor in his defense. The trial court is also authorized to order a psychiatrist or another mental health expert to examine the defendant to help determine whether his sanity is likely to be a significant factor in his defense. When it is determined that it is, the defense must be provided with the assistance of a psychiatrist.

It appears that the court complied with the requirements set forth in *Lindsey*, although trial was held four months before that case was decided. We find no error.

2. Appellant further contends that the trial court committed reversible error by refusing to disqualify the entire jury panel because a prospective juror indicated she had formed an impression or opinion about the case.

During jury selection, the court asked a juror if she could lay aside her impressions or opinion and render a verdict based on the evidence presented in court. She replied: "From what I have heard I believe he's guilty, but I could be proven wrong." The court informed her it merely wanted a "yes" or "no" answer and excused her. Appellant's attorney moved for a mistrial. The court denied the motion and gave curative instructions to the prospective jurors sitting in the courtroom. Appellant again moved for a mistrial, and it was denied. The court then inquired of each panel as to whether there was any reason they knew that they could not be fair and impartial jurors in the case. Each time, no one answered.

Appellant relies upon *Lingerfelt v. State*, 147 Ga. App. 371 (249 SE2d 100) (1978), and *Moore v. State*, 156 Ga. App. 92 (274 SE2d 107) (1980), to support his contention that the juror's remark was inherently prejudicial and deprived him of his right to begin his trial free from even a suspicion of prejudgment or fixed opinion.

In *Lingerfelt*, a juror, in an answer not responsive to any question asked, stated that he had heard too much about the case to be impartial. The trial judge questioned him as to what he had heard and from whom. The juror named several persons he knew who claimed that the defendant was a peeping tom. In *Moore*, the appellant was to be tried on two counts of arson. During voir dire, a prospective juror volunteered the information that the defendant was a volunteer fireman and that "I worked with a guy that said he was a firebug. He said that he would be the first one on the fire scene; that he would set the fire and then run back to the firehouse." In both cases this court reversed the conviction because the trial court failed to disqualify the prospective jurors who heard the inherently prejudicial statements which denied the appellants a fair trial. These cases are distinguished from the instant case because the accused's character and past conduct were not the subject of the comment. Here, the statement was not inherently prejudicial, and the court gave extensive

curative instructions and then very carefully determined that the remark had no prejudicial effect. See *Ford v. State*, 154 Ga. App. 506, 507 (268 SE2d 788) (1980), wherein this court held that a juror's response to counsel's question in which he indicated he felt the defendant might be guilty did not impermissibly place the defendant's character in issue. This enumeration is without merit.

3. On September 30, 1985, appellant filed an amended brief which contains three additional enumerations of error. This case was docketed on July 12, 1985, and appellant had 20 days in which to file his enumeration of error and brief. Court of Appeals Rule 14. Accordingly, his brief and enumeration of errors was due on August 1, 1985. On July 30, 1985, however, he was given a twenty-day extension for filing these documents. Enumerations of error may not be amended after the time for filing has expired. *Burke v. State*, 153 Ga. App. 769 (266 SE2d 549) (1980). We cannot consider the arguments contained in the amended brief because they do not pertain to the original enumeration of error. An enumeration of error may not be enlarged by brief on appeal to cover issues not contained in the original enumeration. *Tucker v. State*, 173 Ga. App. 742 (327 SE2d 852) (1985).

*Judgment affirmed. Pope and Beasley, JJ., concur.*

DECIDED DECEMBER 2, 1985 —
REHEARINGS DENIED DECEMBER 17, 1985 AND JANUARY 8, 1986 —

*Lee Roy Hasty, E. Earl Seals*, for appellant.
*Arthur E. Mallory III, District Attorney*, for appellee.