## 76600. JONES v. THE STATE.
(374 SE2d 110)

BEASLEY, Judge.

Jones appeals his convictions and sentences for four counts of cruelty to children, OCGA § 16-5-70. He alleges errors in both his competency trial and in the trial of the offenses.

1. Jones contends in two enumerations that the court erred in the competency trial in refusing a requested mistrial after it twice allegedly commented improperly and prejudicially on the evidence. This was in regard to psychologist Grigsby, who was called as the State's expert.

The first instance occurred after the State's foundation evidence and offer of Grigsby as an expert in clinical and forensic psychology. Defendant's counsel cross-examined the witness and objected to his acceptance by the court as a *forensic* psychologist. In the course of that cross-examination, Grigsby volunteered: "For 11 years, courts throughout Georgia have accredited me as an expert witness." Counsel replied: "I'm not asking you that. Whether some other court's done it or not, . . ."

Counsel at the same time objected to Grigsby's acceptance as an expert because he was a State employee and thus biased.

In overruling the objection, the court explained: "I have qualified Dr. Grigsby as an expert in the field of both clinical and forensic psychology in the past. I will do so at this time. I have heard Dr. Grigsby testify more than once, and I've heard him testify on both sides of the issue. I don't believe this witness is biased, and I will overrule that objection, and we'll let the record reflect that he can testify as an

expert in the fields of clinical and forensic psychology."

Later, during cross-examination, defendant's counsel sought to discredit Grigsby's opinion of competency by eliciting admissions that he worked for the State and was paid by the State. The court stopped his pursuit of this line of questioning, saying: "Just a moment . . . Let me remind you, I draw a paycheck from up there, too. Now, I'm not going to allow you to pursue this."

Defendant had a right to thoroughly and siftingly cross-examine the witness called against him. OCGA § 24-9-64. An issue during this competency phase was the credibility of the expert. Should the jury believe Dr. Grigsby and accept his opinion, or not? Defendant's witnesses, including his former attorney, had testified that defendant was not competent. Credibility was of course a jury matter, OCGA § 24-9-80, as the court subsequently instructed it. The court also properly instructed that the weight to be given expert testimony is to be determined by the jury. OCGA § 24-9-67; *Moses v. State*, 245 Ga. 180, 181 (263 SE2d 916) (1980). The expert's credentials are relevant to the weight and credit to be given by the jury to his testimony. *McCoy v. State*, 237 Ga. 118, 119 (227 SE2d 18) (1976).

Here the court added the influence of its personal opinion on the expert status of Dr. Grigsby and on the credibility of his testimony. In addition, it cast a cloak of impartiality on that witness, by identifying him in common with the court as a State-paid employee, implying that since the court was unbiased even though paid by the State, so must Dr. Grigsby be.

The court is precluded by law from expressing or intimating opinion as to matters proved or not proved and as to guilt. OCGA § 17-8-57. Whether the witness was biased by employment was an issue, as was the value of his opinion as an expert. The purpose of forbidding comment is to keep the jury from being influenced by the judge, *Morton v. State*, 132 Ga. App. 329, 330 (1) (208 SE2d 134) (1974), so as to preserve inviolate the right of trial by jury, *Crawford v. State*, 139 Ga. App. 347 (228 SE2d 371) (1976). "The credibility and standing of the witness is an issuable fact in every case — a most material fact. Therefore, anything which tends to uphold, to support, to disparage, or to lower the character and the resulting credibility of the witness is vitally connected with the facts of the case. . . ." *Cole v. State*, 6 Ga. App. 798, 799 (65 SE 839) (1909).

Even though unintentional, the court stepped over the line between explaining its ruling and intimating its opinion on issues which were the sole province of the jury. See *Taylor v. State*, 2 Ga. App. 723, 729 (3) (59 SE 12) (1907) regarding the latter. Compare the instant case with *Collins v. State*, 143 Ga. App. 583, 586 (3) (239 SE2d 232) (1977) overruled in part on other grounds *Plemons v. State*, 155 Ga. App. 447, 452 (9) (270 SE2d 836) (1980), reconsidered in *Barnes*

*v. State*, 157 Ga. App. 582, 585 (2) (277 SE2d 916) (1981), and *Patrick v. State*, 245 Ga. 417, 421 (4) (265 SE2d 553) (1980), vacated and remanded for reconsideration in light of *Godfrey v. Ga.*, 446 U. S. 420 (101 SC 1759, 64 LE2d 398) (1980), *Patrick v. Georgia*, 449 U. S. 988 (101 SC 522, 66 LE2d 285) (1980, vacated death penalty 247 Ga. 168 (274 SE2d 570) (1981), 249 Ga. 708 (293 SE2d 329) (1982).

Defendant is entitled to a new trial on competency. If he is found competent, the convictions will stand for the reasons stated hereafter in our analysis of the enumerated errors related to trial of the offenses, and a new judgment shall be entered thereon. However, he will be entitled to appeal anew from the new judgment as it relates to the verdict of competency.

2. Appellant contends the trial court erred in not granting mistrials because it failed to give him adequate funds before the trials to allow an independent psychologist to complete psychological testing and to be present at every phase of both the competency and guilt trials as required under *Ake v. Oklahoma*, 470 U. S. 68 (105 SC 1087, 84 LE2d 53) (1985). He further contends that even if the granted funds were adequate, the court violated *Ake* by not allowing him sufficient time to complete the desired testing.

Prior to arraignment, Jones' appointed counsel filed a petition for psychiatric evaluation by a psychiatrist to determine whether Jones was competent to stand trial and to determine Jones' mental state at the times of the charged offenses. Counsel also filed a notice of intent to raise the defense of insanity or mental incompetence.

An unexpected professional conflict arose, resulting in the appointment of new counsel. The latter filed numerous motions including one under *Ake*. He sought adequate funds to have psychiatric and psychological experts of his choosing consult with and examine defendant and investigate as necessary, to determine whether he was able to form the legal intent for criminal responsibility, to determine whether he was insane or suffering delusional compulsion, and to show mitigating circumstances should he be convicted.

Counsel also filed another notice of intent to raise the defense of insanity or mental incompetence, a plea of insanity, and a special plea of incompetency to stand trial and a motion for transfer of the defendant to the Department of Human Resources under OCGA § 17-7-130.

The trial court ordered that the Department conduct an evaluation of Jones at public expense with respect to defendant's competency to stand trial and his degree of criminal responsibility or mental competence at the time of the act. Dr. Grigsby conducted the ordered evaluation.

Defense counsel moved ex parte to provide funds for expert assistance under *Ake*. Supporting the motion was counsel's affidavit which

gave his opinion that Jones had a meritorious defense in his plea of insanity. The facts underlying the opinion included: Jones had related that he was severely physically abused by his father. Jones had related that his will was sometimes uncontrollably subject to commands of God and the devil and that the acts alleged in the indictments were caused by such commands overpowering his will. Jones' mother believed that Jones was mentally retarded from an early age, made worse by chronic alcohol and drug abuse from late adolescence. The chief jailer had advised counsel that Jones definitely required psychiatric evaluation because he was suicidal. Counsel's review of the psychiatric records from West Central Georgia Hospital showed that Jones was, at least episodically, psychotic and heard commands from the devil. Jones' wife advised that Jones sought treatment for mental illness and chemical dependencies from the local "Personal Growth Center" after the crimes were committed but before arrest. Treatment was prevented by his arrest. Counsel's personal observation of Jones in jail interviews caused counsel to believe that Jones was of sub-normal intelligence, extremely unkempt, unclean, had low self-esteem, unpredictable mood swings, did not comprehend advice and statements made to him, and did not fully understand the nature of the proceedings against him as he believed the only outcome would be that he would be returned to the mental hospital. Jones appeared to be in a daze and despite counsel's attempts seemed unable to assist counsel in preparing his defense.

Defendant made no showing that an examination by Grigsby was or would be inadequate but contended that because Grigsby was a State-paid psychologist, it was probable that his testimony would be biased in favor of the State. After hearing, the court granted $500 for a psychologist of defendant's choice. Thereafter, defense counsel requested an additional $2000 to pay for further services of a chosen psychologist, Brooks, to consult with him and be present in court during trial. A supporting affidavit by Brooks stated that additional testing might be required depending upon the opinion of counsel. The $2000 request was denied. Defense counsel advised the court that Brooks charged $100 for consultation. The court granted defendant an additional $100, and permitted defense counsel, if he so chose, to consult with the psychologist, and to further advise the court if any facts developed helpful to the defendant, whereupon it would consider additional public monies.

Immediately preceding the competency trial, defense counsel moved for a continuance on several grounds including that further psychological testing was required. The court denied the continuance but advised that if the defense chose to call Brooks as a witness, it would, upon proper time sheets in affidavit form, approve funds for Brooks to be available to testify.

Defense counsel made a "continuing objection and a continuing motion for mistrial" because of the court's alleged failure to provide adequate funds to allow Brooks to be at every phase of the trials. The court permitted the continuing objection and denied a mistrial.

Brooks did not testify at either the competency proceeding or at the guilt/innocence trial. Grigsby testified at the competency trial that he conducted a forensic interview with Jones, i.e., in-depth verbal interaction between the psychologist and the defendant consisting of a discussion of what the defendant was charged with and a historical background of the defendant. Grigsby also conducted a number of psychological tests to determine the presence of any mental disorder which might impair defendant's ability to communicate with him or with defendant's attorney.

Jones' mental status exam revealed only a very slight impairment of memory, impaired judgment and a dull intellect which the doctor viewed as not significant because of Jones' extensive history of alcohol and drug abuse. Neurological screening tests did not show abnormality other than some impairment of fine motor skills which was consistent with the history of substance abuse. Though defendant scored a 69 on the administered I.Q. test, Grigsby's opinion was that defendant was actually functioning within the borderline range of intelligence. Following administration of a personality test, Grigsby considered Jones to be "faking sick" and to be exaggerating his responses.

The psychologist diagnosed Jones as a poly drug abuser and a mixed personality disorder, i.e., not a mental disorder but rather "an individual who, for whatever reason, basically creates a lot of problems for society." Grigsby's opinion was that Jones was legally competent to stand trial.

"In *Ake*, the court held that '(w)hen a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must . . . assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.' [Cit.]" *Scott v. State*, 177 Ga. App. 474 (1) (339 SE2d 718) (1986).

"The trial court is also authorized to order a psychiatrist or another mental health expert to examine the defendant to help determine whether his ability is likely to be a significant factor in his defense. When it is determined that it is, the defense must be provided with the assistance of a psychiatrist." Id. at 476, applying *Lindsey v. State*, 254 Ga. 444, 449 (330 SE2d 563) (1985).

The trial court did not deny the initial motion for psychiatric assistance but rather granted the assistance and ordered that Jones be evaluated as to his competency both then and at the time of commission of the offenses.

Inasmuch as the State psychologist's assessment was not favorable to the defense, defendant wished other expert opinion and sought under the auspices of *Ake* to secure funds for alternate expert assessment and assistance. However, defendant made no showing whatsoever that Grigsby's evaluation was inadequate save for it not producing the desired determination. Rather, he traveled on the theory that the doctor's examination was wanting merely because of a presumed bias in favor of the State as Grigsby's employer. This was not enough. See *Scott*, supra at 474 (1).

No further showing having been made, the trial court's grant of funds to secure independent expert opinion was not required under *Ake*. What is more, defendant did not seek the services of independent evaluation by a *psychiatrist*, as provided for in *Ake*, see *Lindsey*, supra at 448, but sought the services of another psychologist.

The trial court did not foreclose further funds for assessment and the expert witness' assistance at the trials but merely required defendant to show the need. The retained psychologist's view that further testing might be needed depending on the opinion of defense counsel fell short of demonstrating the need for further psychiatric assistance. Moreover, even though initial funds had been granted well before the time of trial, defendant waited just prior to the competency proceeding to request the continuance for further evaluation. Defendant had sufficient time in the interim between retaining the psychologist and trial to report to the court any additional need and basis for further time and funds.

Under these circumstances there was no violation of the mandates of *Ake* in refusing the additional funds sought and a continuance of the proceedings, and the trial court did not err in denying a mistrial on the basis of an *Ake* violation.

3. Appellant contends that the competency court erred in failing to grant a mistrial because the State impermissibly went into the question of guilt for the offenses during the competency trial, in violation of *Crawford v. State*, 240 Ga. 321, 325 (2)-326 (2) (240 SE2d 824) (1977). This is rendered moot by our ruling in Division 1.

4. Appellant contends that the trial court erred in refusing to grant a pre-trial hearing on his motion to suppress his confession at the guilt/innocence trial.

Rather than hold a pre-trial hearing on suppression of the confession, the court indicated to counsel during a recess in the course of the trial that it would hear at the same time both the defendant's motion to suppress the confession and the question of the confession's admissibility under *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964). Defense counsel agreed and should not now be allowed to complain of the lack of a pre-trial determination. A party "cannot suffer what he deems to be an injustice during trial, hoping

for an acceptable result, and then after the trial—first state his objection to the procedure followed. [Cit.]" *Moss v. State*, 159 Ga. App. 317, 319 (283 SE2d 275) (1981).

In any event, after a full hearing, the court made determinations on both the question of probable cause and the consequent legality of obtaining the statement, the heart of the motion to suppress, see *State v. Harris*, 256 Ga. 24 (343 SE2d 483) (1986), and on the question of voluntariness, the focus of *Jackson-Denno. Pierce v. State*, 238 Ga. 126, 128 (231 SE2d 744) (1977). Appellant has failed to show how he was harmed by the joint hearing during the trial's course. Without harm there is no reversible error. *Bowen v. State*, 170 Ga. App. 49, 50 (1) (316 SE2d 33) (1984).

5. Appellant contends that the trial court erred in denying a mistrial because of "joint questioning" by the court and the State improperly eliciting evidence of his character at the trial of the offenses.

The defense called Jones' mother to establish, among other things, Jones' history of psychiatric treatment. The objected-to exchange occurred during her cross-examination; she was asked about the times that Jones had been in the psychiatric hospital. The State queried, "And what was it that caused him to go down there to the hospital?" The court ruled, over objection, that the defense had opened the door for the question. Cross-examination continued.

The State asked the mother whether the reason Jones went to the hospital was because he was abusing drugs. Jones' mother responded affirmatively. The court then stated, "I need to know how he was sent. Would you elaborate on that, please?" The State said it would and asked the mother, "What were the — do you know how he was sent down there, did you take him in a vehicle, or did somebody else take him? The mother answered, "No, sir, I think the police took him." The State commented, "Okay." The court asked, "You think what?" Jones' mother reiterated, "The police took him."

The court denied a mistrial on the basis that Jones' character had been put in issue after the court explained that it was after information about the legal vehicle for the defendant's hospitalization, not the means of physical transportation as apparently assumed by the State and the witness.

Police vehicles are routinely utilized to transport patients to state mental facilities. See OCGA § 37-7-101. Even if the jury were to infer from the testimony that defendant had dealings with the police other than ordinary transport as a patient to the mental facility, a suggestion of prior brushes with the law or even of confinement in jail does not automatically place a defendant's character in issue. See *Lewis v. State*, 255 Ga. 681, 682 (2) (a) (341 SE2d 434) (1986); *Fields v. State*, 176 Ga. App. 122, 123 (335 SE2d 466) (1985).

The trial court did not abuse its discretion in refusing to grant a

mistrial on the basis of improper injection of defendant's character.

*Judgments reversed with direction. Birdsong, C. J., and Banke, P. J., concur.*

DECIDED NOVEMBER 10, 1988.

*Cramer, Weaver & Edwards, Christopher C. Edwards*, for appellant.

*Johnnie L. Caldwell, Jr., District Attorney, J. David Fowler, Assistant District Attorney*, for appellee.