A89A1028. PARKER et al. v. CLICKENER.
(387 SE2d 587)

DEEN, Presiding Judge.

Appellant F. Marshall Parker, Jr., M.D., a physician specializing in obstetrics and gynecology, appeals on behalf of himself and his professional corporation from the judgment rendered against him (and the corporation) by a Houston County jury in connection with the cancer-caused death of appellee's decedent, Sheree Oliver Clickener.

The record shows that in October 1981, while the then Ms. Oliver and her fiancee, appellant Clickener, were sexually active with one

another, a "pap" smear taken from Ms. Oliver was designated as Class I, or without atypical cells; that a June 1983 smear was classified as Class II, or showing atypical cells but no evidence of malignancy; and that a smear made in early July of 1983 was again Class I, or normal. The record further shows that in July of the next year, 1984, Oliver was reported as "spotting" between menstrual periods and having a "slight" cervical erosion, and that she was treated for cystitis and "break-through" bleeding from the combined effects of the erosion and the ingestion of birth control pills.

In the meanwhile appellee Clickener, with whom Oliver had continued to have sexual relations, was treated by other physicians for a sexually transmitted disease, chlamydia, beginning October 1, 1983. Testimony given at trial indicates that one of appellee's treating physicians advised him to inform his fiancee that he had the disease, but that Clickener did not do so.

Oliver and Clickener were married in July 1984, and it was at that time that Parker made the diagnosis of cystitis and cervical erosion. In August 1984 a pap smear showed Class III symptoms — cells showing changes suggestive of malignancy — and the cervical erosion was described as "bad." According to the record, the pathologist who examined this smear recommended either a biopsy or a coloscopy. Parker ordered neither, and instead, on September 26, 1984, performed cryosurgery on the cervix. In November of 1984 Ms. Oliver/Clickener continued to experience various symptoms, and, according to the record, in January 1985 Dr. Parker, observing that her cervix was hard and covered with pus, began to suspect the presence of cancer. About one week after this last consultation with appellant Parker, Ms. Oliver/Clickener began hermorrhaging and was diagnosed by another physician as having a bleeding tumor of the cervix, with a probable "Stage IB" cancer. Ms. Oliver/Clickener subsequently underwent a hysterectomy, radiation, and chemotherapy; and, upon discovery that the cancer had metastasized, she underwent surgery of the lung and the brain. She died in May of 1986, and appellee brought the action below in July 1986, alleging that appellant had failed to diagnose cervical cancer between July of 1984 and January of 1985, and that this failure was the cause of the death. The original trial of the case ended in a mistrial, and the trial which resulted in the instant appeal began in August 1988.

According to the videotape deposition of the physician who performed the brain surgery, a timely diagnosis would have given the decedent a 90 percent chance of survival. Parker contended that the likely transmission of Clickener's chlamydia to Ms. Oliver/Clickener during the critical period would have caused the symptoms of cancer — if any were indeed present at that time — to be masked and rendered undetectable to ordinary observation and examination. *Held*:

1. In his first enumeration appellant contends that the trial court erred in overruling his challenge to the jury array and subsequent motion for mistrial. One of the members of the jury array (who, ironically, was the former wife of the trial judge) responded on voir dire to the question, "You wouldn't have any trouble finding for the plaintiff [sic] if the evidence and the law justified it?": "Yes, I was a patient of [Dr. Parker's partner]. My condition was misdiagnosed. Plus I had a friend that her condition was misdiagnosed by Dr. Parker . . . I'm not sure [I could decide on the basis of the evidence in this case alone]." Defense counsel thereupon approached the bench and challenged the jury array on the basis that the prejudicial remark had been made in the presence of all the potential jurors. After this side-bar conference, at which the trial court agreed to permit a continuing objection, counsel once again questioned this juror: "[I]f you were selected to sit on this jury, could you listen to what Judge Richardson gives you as the law in the case and listen to the testimony and the evidence . . . and render a decision . . . based on the evidence and the facts that you heard in this case and the law that his Honor gave you?" She replied, "I cannot," and reiterated, "I think not," in response to a slightly restated version of the same question; whereupon the trial court declared her disqualified to serve on the jury.

Defense counsel subsequently renewed his challenge to the array and moved for mistrial on the basis of the juror's statement and certain other alleged improprieties. According to the transcript, the trial court overruled the challenge to the array and the motion for mistrial and promised to instruct the jury that "information elicited on voir dire is not evidence and will not be considered . . . in the case."

In *Hughey v. State*, 180 Ga. App. 375 (348 SE2d 901) (1986), this court reviewed at length, at 377-378, cases in which "disparaging and improper remarks have been made before the jury about the defendant which involved the discretion of the trial court in aborting the trial:" e.g., *Stanley v. State*, 250 Ga. 3 (295 SE2d 315) (1982); *Knight v. State*, 243 Ga. 770 (257 SE2d 182) (1979); *Williams v. State*, 242 Ga. 757 (251 SE2d 254) (1978); *Ogles v. State*, 238 Ga. 716 (235 SE2d 384) (1977); *Weldon v. State*, 175 Ga. App. 172 (333 SE2d 23) (1985).

In *Lingerfelt v. State*, 147 Ga. App. 371 (249 SE2d 100) (1978), the defendant was accused of sexual offenses. On voir dire a prospective juror stated that he "had heard too much" about the case to be impartial and, in response to further questioning in the presence of other potential jurors, named several persons from whom he had heard that the defendant was a "peeping tom." The trial court overruled defense counsel's motion for mistrial, and this court reversed, holding, at 372-373, that "[t]he statements made by the prospective juror in the presence of the remainder of the panel were prejudicial and entitled the appellant to a new panel" because "the responses

subsequently elicited . . . branded the accused as a sex deviate before the trial had ever begun. . . . This was *inherently* prejudicial and deprived the appellant of his right to begin his trial with a jury 'free from even a suspicion of prejudgment. . .' " In *Moore v. State*, 156 Ga. App. 92 (274 SE2d 107) (1980), in which the defendant was charged with first-degree arson, a prospective juror volunteered, in the presence of other prospective jurors: " 'He was a volunteer (fireman). I worked with a guy that said that he was a firebug . . ., that he would set the fire and then run back to the fire house.' " Defense counsel challenged the jury poll, but the trial court disqualified that particular juror, as in the instant case, and instructed the others to disregard the statement. This court, citing *Lingerfelt*, supra, reversed, holding at 93: "It cannot seriously be argued that a prospective juror in an arson case could remain neutral after hearing sworn testimony by another prospective juror to the effect that the defendant was . . . a firebug . . . [S]uch a statement was 'inherently prejudicial'. . . ."

Appellee contends that the instant case is controlled by *Hughey v. State*, supra, in which a prospective juror stated on voir dire: "I have arrested [the defendant]." This court, in affirming, distinguished [*Hughey*] from *Moore* and *Lingerfelt*: "Those types of characterizations imply guilt, whereas in the instant case the reference was to an 'arrest' which could have been as innocuous as a speeding ticket . . . [W]e do not find the potential juror's reference to an arrest . . . so inherently prejudicial as to deny defendant a fair trial." Id. at 378.

In the instant case, as in *Moore* and *Lingerfelt*, the challenged remark expressly accuses the defendant of conduct of the very same sort as that for which he is about to stand trial. This is clearly distinguishable from such cases as *Hughey* and the decisions cited therein, in which the challenged statements are disparaging only in rather general terms. Cf. *Austin v. State*, 180 Ga. App. 226 (348 SE2d 746) (1986); *Scott v. State*, 177 Ga. App. 474 (339 SE2d 718) (1986); *Ford v. State*, 154 Ga. App. 506 (268 SE2d 788) (1980).

We note, however, that OCGA § 15-12-162, on which appellant's enumeration is based, is properly applicable to criminal cases only. *Atlantic Coast Line R. Co. v. Mead*, 22 Ga. App. 70 (95 SE 476) (1918). In civil cases a juror may be challenged under OCGA § 15-12-123. See *Jones v. Cloud*, 119 Ga. App. 697 (168 SE2d 598) (1967). No written challenge is required. *Atlantic Coast Line R. Co. v. Bunn*, 2 Ga. App. 305 (58 SE 538) (1907).

The trial court erred in not calling for a new array of jurors, and this case must be remanded for new trial.

2. We find that the trial court erred in excluding the evidence recited in the second, third, fourth, and fifth enumerations. It is well settled that where there is doubt as to the relevancy of proffered evidence (which is not otherwise inadmissible), the trial court should ad-

mit it and, as appropriate, give the jury limiting instructions as to its use. *Energy Contractors v. Ga. Metal &c.*, 186 Ga. App. 475 (367 SE2d 324) (1988); *Weathers v. Cowan*, 176 Ga. App. 19 (335 SE2d 392) (1985). Questions of relevancy are for the trial court, and, absent abuse of judicial discretion, the appellate court will not interfere. *Energy Contractors v. Ga. Metal &c.*, supra at 176.

3. Appellant's sixth, seventh, eighth, and ninth enumerations of error are without merit. We find that the rejected jury instructions are argumentative in tone and assume facts not in evidence. The court therefore acted properly in omitting them from his charge to the jury.

4. Appellant's tenth enumeration addresses the general grounds. We find no error of law or insufficiency of competent evidence to authorize the verdict. This enumeration is therefore without merit.

5. Because the alleged error in appellant's final enumeration is unlikely to recur on retrial, we do not address it here.

*Judgment reversed. Birdsong and Benham, JJ., concur.*

DECIDED OCTOBER 16, 1989 —
REHEARING DENIED OCTOBER 30, 1989 —

*Jones, Cork & Miller, Carr G. Dodson, Bradley J. Survant*, for appellants.

*Reynolds & McArthur, W. Carl Reynolds, Charles M. Cork III, Katherine L. McArthur*, for appellee.