DICKINSON, Justice,
dissenting:
¶ 63. At the conclusion of Dr. Malachy DeHenre’s first trial, eleven jurors voted to acquit him. At the beginning of his second trial, during jury selection, a potential juror — in front of all the other potential jurors — accused the defendant (a medical doctor) of being an abortionist. According to the trial judge, the abortionist accusation was “the most outrageous thing that I’ve seen in a long time in a courtroom.” But rather than questioning each potential juror — in private — about such important information as their personal, moral, and religious views of abortion; their opinions of the doctors who perform them; and their families’ personal experiences,[4] the trial judge simply asked the entire group if they could “put that aside,” to which the jurors replied, en masse, “yes sir.” At the conclusion of the second trial, they unanimously voted to convict.
¶ 64. The majority — finding the abortionist comment “perhaps more troublesome than [comments such as the defendant being] mentally off” — concludes the trial judge committed no error or, if he did, it was “harmless.” I disagree and respectfully dissent.
ANALYSIS
¶ 65. We have never addressed this situation. However, the Fifth Circuit has,[5] citing with approval the American Bar Association’s standards for the conduct of trials — standards which, though not binding on our courts, set forth sound and sensible principles. Standard 15-2.4 for the conduct of jury trials reads in part:
(e) Jurors should be examined outside the presence of other jurors on sensitive matters or prior exposure to potentially prejudicial material.
(1) Sensitive matters are those matters which might be potentially embarrassing or intrusive into the juror’s private life, feelings or beliefs, or those matters which if discussed in the presence of the jury panel, might prejudice or influence the panel by exposing other potential jurors to improper information.
(2) Examination of the prospective juror with respect to that juror’s exposure to potentially prejudicial material should be conducted in accordance with ABA Standards for Criminal Justice relating to Fair Trial and Free Press.[6]
The standards referred to in (e)(2) read in part:
The following standards govern the selection of a jury in those criminal cases in which questions of possible prejudice are raised:
(a) If there is a substantial possibility that individual jurors will be ineligible to *421 serve because of exposure to potentially prejudicial material, the examination of each juror with respect to exposure should take place outside the presence of other chosen and prospective jurors. An accurate record of this examination should be kept by a court reporter or tape recording whenever possible. The questioning should be conducted for the purpose of determining what the prospective juror has read and heard about the case and how any exposure has affected that person’s attitude toward the trial, not to convince the prospective juror that an inability to cast aside any preconceptions would be a dereliction of duty.
(b) Whenever prospective jurors have been exposed to potentially prejudicial material, the court should consider not only the jurors’ subjective self-evaluation of their ability to remain impartial but also the objective nature of the material and the degree of exposure. The court should exercise extreme caution in qualifying a prospective juror who has either been exposed to highly prejudicial material or retained a recollection of any prejudicial material.[7]
¶ 66. American opinion concerning abortion is sharply divided along moral, religious, and constitutional lines. Few topics are more sensitive, and labeling the defendant — in front of the entire venire— an abortionist, surely could “intru[de] into the juror’s private life, feelings or beliefs.” No one — including my colleagues in the majority — would dispute the “potentially prejudicial” nature of the remark.
¶ 67. In Davis, the potentially prejudicial remark came not from a venireman but rather from pretrial publicity.[8] But the source of the prejudicial information does not change the analysis. The Davis court — holding that questioning the jury panel as a group was inadequate — wrote:
Under the circumstances of this case, where the nature of the publicity as a whole raised a significant possibility of prejudice, the cursory questioning by the court was not enough. The court should have determined what in particular each juror had heard or read and how it affected his attitude toward the trial, and should have determined for itself whether any juror’s impartiality had been destroyed. The ABA Standards Relating to Fair Trial and Free Press recommend that the district court examine each juror individually and out of the presence of other jurors to determine what he heard or read and how it has affected his attitudes towards the trial.[9]
¶ 68. The view I express today does not require individual voir dire in every case involving a prejudicial remark. Indeed, the Davis court declined to declare a bright-line rule, stating instead that “[al-tjhough separate examination of jurors is sometimes preferable, it is not necessarily required. We recognize the district court’s need for flexibility in interrogating jurors as to possible prejudice.”[10]
¶ 69. While I readily agree with that sensible approach, I am firmly convinced that, in this case, the abortionist accusation “raised a significant possibility of prejudice, [and that] the cursory questioning by the court in this case was not enough: *422 “The [trial] court erred in not undertaking a more thorough examination of those panel members.... ”[11]
¶ 70. The Davis opinion stressed, too, that the judge should not simply ask the jurors whether they “can lay aside any impression or opinion due to the exposure” to potentially prejudicial information.[12] The judge must make that determination, because “[t]he juror is poorly placed to make a determination as to his own impartiality.” [13]
¶ 71. In today’s case, after the jurors had heard the abortionist remark and the defense had moved for a mistrial, the following exchange ensued:
The court: “Can all of you tell me now that whatever this person who obviously was — I don’t know what her purpose was. I have no idea. But that was the most outrageous thing that I’ve seen in a long time in a courtroom. Can all of you tell me that you will put that aside?”
Jurors: ‘Tes, sir.”
The court: “I don’t know whether you people come up here — we have come here today, this is a place where people come for justice. We don’t come here to make acquisitions [sic] and make statements. I’m sure that that person, her purpose for doing that was to try to prejudice you in some way. But can all of you tell me at this time that you can put that aside[?]”
Jurors: ‘Tes, sir.”
¶ 72. The judge should not have simply accepted a perfunctory “yes, sir” from the group. Individual voir dire would have provided him, and us, with much more reliable answers to important questions that were not even asked.
¶ 73. Apparently — -and surprisingly — no previous case exists in any jurisdiction in which a member of the jury venire labeled the defendant an abortionist in the presence of other jurors.[14] This is not, however, the first time that a potential juror has made a highly prejudicial remark about a defendant during voir dire. The Georgia Court of Appeals has addressed at least two such situations.
¶ 74. During voir dire in an arson trial, a prospective juror said of the defendant, “He was a volunteer [fireman]. I worked with a guy that said that he [the defendant] was a firebug. He said that he would be the first one on the fire scene; that he would set the fire and then run back to the fire house.”[15]
¶ 75. The trial court disqualified the venireman and gave curative instructions to those remaining.[16] The defendant moved for a mistrial, or alternatively, for a continuance, and the trial judge denied both motions.[17] The Georgia Court of Appeals reversed, stating:
It cannot seriously be argued that a prospective juror in an arson case could remain neutral after hearing sworn testimony by another prospective juror to *423 the effect that the defendant was reputed to be a firebug. If such knowledge was sufficient to authorize the disqualification of the panel member who made the statement, as the trial court evidently concluded, it was necessarily sufficient to require the disqualification of the others.[18]
¶ 76. The Moore court relied on another Georgia case wherein, during voir dire in a rape trial, a prospective juror, in the presence of the venire, “named several persons known to him who claimed that the defendant was a peeping tom.”[19] When the defense moved for a mistrial, the trial judge declined to disqualify the jury panel.[20] The Georgia Court of Appeals reversed, holding that
The statements made by the prospective juror in the presence of the remainder of the panel were prejudicial and entitled the appellant to a new panel. Had the juror said nothing more that [sic ] he heard too much about the defendant to be impartial, disqualification of the remainder of the panel would not have been necessary. However, the responses subsequently elicited from him went far beyond this and constituted improper testimony which branded the accused as a sex deviate before the trial had even begun. An instruction to the remainder of the panel to disregard these comments could not have been sufficient to erase the potential harm done.[21]
¶ 77. We of course are not bound by a sister state’s caselaw. But I find these two cases instructive and persuasive. The abortionist accusation in today’s case was at least as prejudicial as those in the Georgia cases. Indeed, “firebug” and “peeping Tom” strike me as considerably less inflammatory labels than “abortionist” — and particularly if some of the potential jurors harbored moral, religious, and personal views against abortion.
¶ 78. In DeHenre’s first trial — in the absence of any allegation that the defendant was an abortionist — eleven jurors voted for acquittal and only one for conviction. Although that fact is not dispositive, it suggests that the abortionist accusation may very well have irreversibly inflamed the passions of at least one person on the second jury, resulting in prejudice to De-Henre.[22]
¶ 79. Because of the strong possibility that the abortionist comment caused “substantial and irreparable prejudice to [De-Henre’s] case”[23] in the mind of at least one juror, I would reverse and remand for a new trial.
GRAVES, P.J., KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION.

.Does the majority really think, for instance, that a juror whose child obtained an abortion without parental consent would raise his or her hand and discuss the matter in front of everyone? And does the majority actually believe the potential juror could “put it aside?”

. U.S. v. Davis, 583 F.2d 190, 196-198 (5th Cir.1978).

. ABA Standards for Criminal Justice: Trial by Jury, Standard 15-2.4(e): Conduct of Voir Dire Examination (1993).

. ABA Standards for Criminal Justice: Fair Trial and Free Press, Standard 8-3.5: Selecting the Jury (3d ed. 1992).

. Davis, 583 F.2d at 196.

. Id.

. Id. at 196-97.

. Id.

. Id. at 197.

. Id.

. This, of course, could be due to the fact that most courts would simply grant a mistrial.

. Moore v. State, 156 Ga.App. 92, 92-93, 274 S.E.2d 107, 108 (1980).

. Id. at 108.

. Id.

. Id.

. Lingerfelt v. State, 147 Ga.App. 371, 372, 249 S.E.2d 100, 102 (1978).

. See id. at 103.

. Id. at 103 (citations omitted).

. See URCCC 3.12 (stating that the trial court may declare a mistrial in the event of “substantial and irreparable prejudice to the movant’s case”).

. Id.