A99A1663. SINYARD v. THE STATE.
(531 SE2d 140)

POPE, Presiding Judge.

Benny Ray Sinyard was convicted of theft by conversion after he agreed to invest $45,000 for Opal Nelson but never returned or accounted for the funds. On appeal, Sinyard claims that the State failed to prove an element of the crime, that the jury pool was tainted by a prospective juror's statement, and that he received ineffective assistance of counsel. The victim testified that in February 1997, Sinyard told her that he worked for American Income Life Insurance Company and that it had a brokerage section called "American Income Services." He promised that if she gave him $10,000 to invest

for one year, she would get $30,000, including her investment, and that she "may get even more than that." He stated that the return was "one-hundred percent" guaranteed and that she could get her money back at any time. She did not see any documentation of the investment, and she conceded at trial that she did not know the nature of the investment, but she agreed and gave him $10,000 cash. Sinyard signed a receipt for the investments, handwritten by Nelson, promising to return the entire principal at any time Nelson requested. He had refused to sign a receipt that mentioned the $20,000 return.

Three weeks later Sinyard again approached Nelson and told her that if she invested another $10,000, she would receive interest in the amount of $1,000 per month. She accepted and made three payments totaling $10,000. On one of the checks, Sinyard told Nelson to write that it was payment for a fence, and she wrote "fence" in the memo area. Two of the checks, which Nelson made out to Sinyard, are signed by Sinyard on the back below an endorsement stating, "for deposit only." Sinyard signed another receipt, also handwritten by the victim, promising to return the entire principal at any time Nelson requested.

In April, Sinyard again approached Nelson and told her that he was going to invest $900,000 that he had received from some doctors and lawyers, and he said, "Opal, you ought to get in on this; minimum is $25,000." She gave Sinyard a $25,000 check. Nelson had to go to his office to get him to sign another handwritten receipt, in which he promised to return the principal plus interest in one month.

Despite her requests, Sinyard never returned any of the money from the first investment. As for the second investment, she received only one "interest" payment of $500. In response to her questions, Sinyard told Nelson that he had the money invested, that $500 was all she was going to get, and that, "that was the end of it." He also refused to return the principal. Nelson never saw her $25,000 investment again and never got any interest. In response to her demands to return the money, Sinyard told her he had cashed a check — ostensibly some sort of return on the investments — but he was afraid that it was going to bounce. Eventually, Nelson demanded in writing that Sinyard return all of her money. Sinyard never complied.

1. We first address whether the State proved the elements of the crime.

Under OCGA § 16-8-4 (a), to convict for theft by conversion the State must prove the following elements: (1) the defendant "lawfully obtained funds or other property of another . . . under an agreement . . . to make a specified application of such funds . . ."; (2) the defendant "knowingly convert[ed] the funds . . . to his own use"; (3)

"in violation of the agreement. . . ."

There is no question that Sinyard received the money. The only question is whether there was evidence that he converted the money to his own use. Although it would be better practice to present specific evidence showing where the money went, we hold that the evidence in this case was sufficient to authorize the jury to infer that Sinyard converted the money to his own use. It is true that Nelson admitted she had no proof that Sinyard failed to invest her money or that he bought anything for himself with the money. And, she plainly admitted she did not know what he did with the money. But Nelson testified to many facts which could lead a rational juror to conclude beyond a reasonable doubt that Sinyard fraudulently converted the money. Therefore, the evidence was sufficient to support the verdict. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

With Sinyard's "investments," none of the standard paperwork evidencing an investment was furnished to Nelson. In fact, she herself had to handwrite receipts for Sinyard to sign. And although Sinyard guaranteed highly improbable returns, he refused to sign a receipt to that effect. He even told her to write on one check that it was payment for a fence. Further, he had her make the checks out to him personally, not to an investment company or his life insurance company. He deposited at least two of the checks into a personal account, and although this was consistent with the fact that the checks were made out to him, that fact too raises an inference of wrongdoing under the circumstances.

In *Baker v. State*, 143 Ga. App. 302 (238 SE2d 241) (1977), this Court held that the jury was entitled to infer from the collective evidence that the defendant had intended to convert a church's funds to his own use. The evidence showed that the defendant failed to use the church's money to pay a bill that the money was intended for; rather, he used money that he had borrowed from others. Id. We held that the jury could infer from the fact that the bill was paid with borrowed funds that the defendant had appropriated the money to his own use. Id. at 304.

"OCGA § 16-8-4 is intended to punish fraudulent conversion, not breach of contract, and in order to avoid the constitutional prohibition against imprisonment for debt the State must prove fraudulent intent." *Scarber v. State*, 211 Ga. App. 260 (439 SE2d 83) (1993). Construing the facts in this case in favor of the verdict, we hold that like in *Baker*, the jury was authorized to infer fraudulent intent based on the circumstances of the transaction.

Cases cited by Sinyard are distinguishable from this case. None contain the type of outlandish promises and irregular procedures found in this investment transaction. See *Scarber*, 211 Ga. App. 260 (defendant had not accounted for furniture left with him on consign-

ment; improper for the jury to infer fraudulent intent from victim's testimony that she thought defendant was avoiding her); *Barrett v. State*, 207 Ga. App. 370 (427 SE2d 845) (1993) (defendant failed to return rented video equipment; no evidence of fraudulent intent); *Tchorz v. State*, 197 Ga. App. 185 (397 SE2d 619) (1990).

2. Sinyard also argues that he is entitled to a new trial because the entire jury pool was tainted by a comment made by one prospective juror during voir dire. That prospective juror responded to a question put to the panel by stating that a friend of hers had been cheated by Sinyard. Sinyard's attorney moved for a mistrial, but the court denied the motion. The court gave a lengthy curative instruction.

The test to be applied is whether the remarks were "inherently prejudicial and deprived [defendant] of his right to begin his trial with a jury 'free from even a suspicion of prejudgment or fixed opinion. . . .' [Cit.]" (Emphasis omitted.) *Lingerfelt v. State*, 147 Ga. App. 371, 373 (1) (249 SE2d 100) (1978).

Here, even with the curative instruction the statement is prejudicial. As stated in *Moore v. State*, 156 Ga. App. 92, 93 (1) (274 SE2d 107) (1980):

> It cannot seriously be argued that a prospective juror in [a criminal conversion] case could remain neutral after hearing sworn testimony by another prospective juror to the effect that the defendant was reputed to be a [cheat]. If such knowledge was sufficient to authorize the disqualification of the panel member who made the statement, as the trial court evidently concluded, it was necessarily sufficient to require the disqualification of the others.

In *Moore*, this Court found that a remark by a potential juror in an arson case that the defendant was a "firebug" was prejudicial. Id. In *Lingerfelt* we found prejudice where the prospective juror in a rape case said he had heard that the defendant was a peeping Tom. Id. at 373 (1). Here, Sinyard was directly linked to criminal activity similar to the charges against him, and the comment implied he was guilty. A new trial is warranted. As a result, Sinyard's assertion that his trial counsel was ineffective is moot.

*Judgment reversed. Smith and Miller, JJ., concur.*

DECIDED MARCH 10, 2000 —
RECONSIDERATION DENIED MARCH 29, 2000.
Theft by conversion. Pulaski Superior Court. Before Judge Mullis.
*Nicholas E. White*, for appellant.

*Timothy G. Vaughn, District Attorney, Russell P. Spivey, James E. Turk, Assistant District Attorneys,* for appellee.