## A00A2146. HASH v. THE STATE.
### (546 SE2d 833)

PHIPPS, Judge.

Thomas Hash appeals his convictions for aggravated assault, possession of a firearm during the commission of a crime, and disorderly conduct.[1] He contends that the trial court erred in denying his motions for mistrial and directed verdict and that the evidence was insufficient to support his convictions. We affirm because we find that the trial court properly denied the motions and that the evidence was sufficient.

---

[1] For sentencing, the trial court merged the disorderly conduct and aggravated assault convictions.

Construing the evidence in the light most favorable to the verdict, the jury was authorized to find that the following occurred. On the night of November 29, 1998, Hash was at home with Patricia Suttler, his live-in girlfriend of 37 years, and their adult son. Hash and Suttler had been drinking alcohol. Their son was high on drugs. Hash went outside, and Suttler and their son heard gunshots. Apparently, Suttler believed that Hash had fired the shots. Fearing that Hash's behavior would worsen if he continued to drink, Suttler hid liquor that Hash had placed in the refrigerator. After Hash returned, he noticed that the liquor was missing. He became upset and got a .25 caliber pistol. Then he held Suttler against the wall, put the pistol to the back of her head, and threatened that if she did not tell him where his liquor was, he would kill her.

Afterward, Suttler called 911. Before she could explain the situation, Hash took the phone from her and hung it up. The 911 operator called back, and Hash told the operator that the police would need a warrant to get on his property. The operator heard Suttler in the background saying that the police were needed.

Officer Charles Holcombe was dispatched to the scene. Suttler told him that Hash was drunk and had put a gun to her head and threatened to kill her. It appeared to Holcombe that Suttler was very upset and very frightened. After Hash had been placed in a police car, Suttler told Holcombe several times that she was afraid because Hash had threatened to kill her. She also stated that she was worried that Hash would come back and harm her once he was released from jail. Suttler gave Holcombe the loaded pistol that had been put to her head.

1. On appeal, the standard of review for denial of a motion for directed verdict is the same as that for determining the sufficiency of the evidence to support a conviction.[2]

> The issue . . . is whether, based on the evidence presented, a rational finder of fact could have found the accused guilty of the charged offenses beyond a reasonable doubt. Leaving the resolution of conflicting or contradictory testimony and the credibility of the witnesses to the jury, we construe the evidence in favor of the jury's verdicts. In this regard, even though a witness may recant on the stand, his prior inconsistent statements constitute substantive evidence on which the jury may rely.[3]

---

[2] *Jackson v. State*, 236 Ga. App. 260 (511 SE2d 615) (1999).

[3] (Footnotes omitted.) *Gunsby v. State*, 248 Ga. App. 18 (1) (545 SE2d 56) (2001).

Hash contends the evidence was insufficient because Suttler testified at trial that he did not put a gun to her head and that she called the police to break up a fight between him and their son. She testified that she fabricated allegations against Hash because their son was on probation and would face more serious consequences if arrested. Hash also argues that the evidence did not corroborate Suttler's prior statement.

Despite these arguments, we find that the evidence was sufficient to support Hash's convictions because the jury was authorized to rely upon Suttler's prior statement in reaching its verdict,[4] and therefore the court did not err in denying the motions for directed verdicts.

2. During jury voir dire, the prosecutor asked whether any members of the venire knew Hash or were acquainted with him. One potential juror responded, "I — I'm not sure, but I think his fam — face is familiar, working in admissions at Northwest. I don't know if — but he looks very familiar." Then, the prosecutor asked the prospective juror whether her possible acquaintance with Hash would affect her deliberations. She responded, "If I recalled that he had a strong repeat admission to Northwest for substance abuse, that would."

After a bench conference, the court excused the prospective juror and asked the remaining members of the venire to raise their hands if any of them could not disregard what the excused juror had said. No hands were raised. Hash moved for mistrial, contending that the effect of the prospective juror's comments had not been cured.

"A trial court has broad discretion in ruling on a motion for a mistrial, and this court will not disturb such ruling in the absence of a manifest abuse of that discretion which threatens the defendant's right to a fair trial. [Cits.]"[5] "The test to be applied is whether the remarks were inherently prejudicial and deprived defendant of his right to begin his trial with a jury free from even a suspicion of prejudgment or fixed opinion."[6]

We find examples of reversible error in the cases of *Lingerfelt v. State*,[7] *Moore v. State*,[8] and *Sinyard v. State*.[9] In *Lingerfelt*, the defendant was on trial for burglary, rape, aggravated sodomy, and armed robbery. During voir dire, a prospective juror stated that he

---

[4] See *Gunsby*, supra; *Boyd v. State*, 230 Ga. App. 314 (1) (497 SE2d 3) (1998); *Gibbons v. State*, 248 Ga. 858, 862-864 (286 SE2d 717) (1982).

[5] *Weaver v. State*, 178 Ga. App. 91, 93 (2) (341 SE2d 921) (1986).

[6] (Citations and punctuation omitted.) *Sinyard v. State*, 243 Ga. App. 218, 221 (2) (531 SE2d 140) (2000).

[7] 147 Ga. App. 371, 372-374 (1) (249 SE2d 100) (1978).

[8] 156 Ga. App. 92, 93 (274 SE2d 107) (1980).

[9] Supra, 243 Ga. App. at 221.

knew several persons who claimed the defendant was a peeping Tom. In *Moore*, the defendant was on trial for arson, and a prospective juror stated that he had worked with a man who said the defendant was a firebug. And in *Sinyard*, where the defendant was on trial for theft by conversion, a prospective juror responded to a voir dire question by stating that a friend of hers had been cheated by the defendant.

This case is clearly distinguishable from those cases. It is more analogous to cases like *Sims v. State*[10] and *Sexton v. State*,[11] where we did not find reversible error. In *Sims*, the defendant was on trial for armed robbery, and a venireman stated during voir dire that he had worked with kids who suffered from mental retardation, behavior problems, or drug abuse and that he thought he remembered the defendant's face, though he was not sure. In *Sexton*, the defendant was on trial for aggravated assault, and a prospective juror stated during voir dire that the defendant looked like a drunk driver who had caused an accident at which she had rendered aid.

Given the uncertain nature of the prospective juror's statements at issue, we find that they were not inherently prejudicial.[12] Moreover, we disagree with Hash's contention that the trial court's curative measures were insufficient to eliminate any prejudice which might have been created by the statements. When the judge asked the remaining members of the jury panel if any of them could not disregard the statements, he implicitly instructed them to disregard the statements. By lack of an affirmative response to the trial court's inquiry, the remaining veniremen indicated that they would not be affected by the statements.[13]

Hash could have examined the prospective jurors further regarding any lingering effects of the statements.[14] Moreover, although he complains that the court's curative measures failed to include an instruction to the jury, he did not request a more adequate instruction. We find no manifest abuse of discretion in the trial court's disposition of Hash's motion for a mistrial.

However, we note that after a prospective juror has indicated during voir dire that he or she may be familiar with the defendant, the trial court should conduct follow-up questioning outside the hearing of other prospective jurors.[15] Although the court failed to do so in this case, the comments by the prospective juror were not so prejudi-

---

[10] 226 Ga. App. 116, 117-118 (2) (486 SE2d 365) (1997).

[11] 189 Ga. App. 331, 332 (1), (2) (375 SE2d 661) (1988).

[12] See *Tubman v. State*, 185 Ga. App. 731, 732 (1) (365 SE2d 879) (1988); *Stone v. State*, 170 Ga. App. 234, 235 (1) (316 SE2d 836) (1984).

[13] See *Pruitt v. State*, 176 Ga. App. 317, 318 (1) (335 SE2d 724) (1985).

[14] See id.

[15] See *Worley v. State*, 201 Ga. App. 704, 707-709 (3) (411 SE2d 760) (1991).

cial as to necessitate a mistrial.

*Judgment affirmed. Johnson, P. J., and Smith, P. J., concur.*

DECIDED MARCH 6, 2001 — 

*Ronald G. Shedd*, for appellant.

*Tambra P. Colston, District Attorney, C. Stephen Cox, Assistant District Attorney*, for appellee.