### A09A0752. FLORES v. THE STATE.
(680 SE2d 609)

BLACKBURN, Presiding Judge.

Following a jury trial, Martin Flores appeals his conviction for kidnapping[1] and child molestation.[2] Regarding the kidnapping conviction, he challenges the sufficiency of the evidence pertaining to the element of asportation; regarding the child molestation conviction, he argues that the trial court erred in denying his motion for directed verdict (in which he argued that the State failed to prove that his private part touched the private part of the victim as alleged in the indictment). We hold that the evidence showed the asportation needed for a kidnapping conviction and that the State proved the elements of child molestation as alleged. Accordingly, we affirm.

When reviewing a defendant's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. *Short v. State*.[3] We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*.[4] This stan-

---

[1] OCGA § 16-5-40 (a).
[2] OCGA § 16-6-4 (a).
[3] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).
[4] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

YALE LAW LIBRARY

dard applies also to our review of the denial of motion for a directed verdict. *Hash v. State.*[5]

So viewed, the evidence shows that late one evening when a 12-year-old female was returning home after a party, 19-year-old Flores burst from the bushes near the front door of the young girl's home and confronted her about her unwillingness to engage in a romantic relationship with him. He then grabbed her arm and forced her out of sight to the unlit back side of the residence, where he tripped her and pulled her pants down. Over the girl's protests, Flores tried to penetrate her private area, but she pushed him to the side. In response, Flores flipped the girl over onto her stomach and penetrated her private area from behind. During the assault, he put his hand over her mouth to stop her from screaming.

The young girl's mother, who had recently arrived home and had been looking for her daughter in the residence and in the yard around its entrance, walked to the back of the residence and saw Flores on top of her daughter with his pants down. The girl shouted that Flores was raping her, and Flores fled the scene.

Flores was indicted for aggravated assault (assault with intent to rape), kidnapping, false imprisonment, child molestation, and criminal attempt to rape. At trial, an officer testified that the victim picked Flores from a photographic lineup and that the victim had told him she had been penetrated both while face-to-face with Flores and while Flores attacked her from behind. A jury found Flores guilty on all counts, following which the judge merged the false imprisonment count into the kidnapping count, and the criminal attempt count into the aggravated assault count, and sentenced Flores. Following the denial of his motion for new trial, Flores appeals.

1. Flores first argues that under *Garza v. State*,[6] the State failed to prove the asportation element necessary to sustain a kidnapping conviction. We disagree.

*Garza* adopted a test first articulated in *Govt. of Virgin Islands v. Berry*,[7] which set forth four factors to be considered in determining whether the movement at issue constituted the asportation needed for kidnapping:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that

---

[5] *Hash v. State*, 248 Ga. App. 456, 457 (1) (546 SE2d 833) (2001).

[6] *Garza v. State*, 284 Ga. 696, 702 (1) (670 SE2d 73) (2008).

[7] *Govt. of Virgin Islands v. Berry*, 604 F2d 221, 227 (IV) (3rd Cir. 1979).

separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

*Garza*, supra, 284 Ga. at 702 (1). *Garza* emphasized that

> [a]ssessment of these factors will assist Georgia prosecutors and courts alike in determining whether the movement in question is in the nature of the evil the kidnapping statute was originally intended to address — i.e., movement serving to substantially isolate the victim from protection or rescue — or merely a "criminologically insignificant circumstance" attendant to some other crime.

Id.

Our assessment of the four factors confirms that the evidence here showed that Flores's movement of the victim substantially isolated the victim from protection or rescue. Although the duration of the movement was short, and although the movement occurred during the commission of the sexually-motivated aggravated assault, the movement did not constitute an inherent part of that aggravated assault but was clearly designed to present a significant danger to the victim independent of the assault. Flores's forced removal of the victim from a visible area to the secluded dark area behind the residence was not essential to the assault itself (an assault can occur in broad daylight in an open area) but was instead an attempt to isolate the victim from protection and rescue, thus increasing the danger faced by the victim. Compare *Rayshad v. State*[8] (no evidence that moving the victim from room to room inside a home in search of money enhanced significantly the risk she was already facing during the commission of the robbery). The mother's unsuccessful attempts to locate her daughter in the lighted area in front of the residence only bolster the conclusion that the removal of the victim here to the rear of the residence was to isolate her from protection or rescue, as the removal was successful in accomplishing this for a period of time. The evidence sufficed to sustain the kidnapping conviction.

*Henderson v. State*,[9] recently decided by the Supreme Court of Georgia, substantiates this conclusion. In *Henderson*, three gunmen entered a duplex and robbed four victims at gunpoint. Id. at 241 (1). "These four [victims] were then ordered into one room and told to remove their clothes and get on the floor." Id. Convicted on four counts of kidnapping and of armed robbery, one of the gunmen

---

[8] *Rayshad v. State*, 295 Ga. App. 29, 33-34 (1) (b) (670 SE2d 849) (2008).
[9] *Henderson v. State*, 285 Ga. 240, 244-245 (5) (675 SE2d 28) (2009).

YALE LAW LIBRARY

appealed, arguing that under *Garza* the element of asportation was not shown. Sustaining the kidnapping convictions, *Henderson* conceded that "the movement of the victims from one room to another within the duplex was of minimal duration," but held that "such movement was not an inherent part of the armed robbery" and in fact "occurred after the offense of armed robbery had been completed." Id. at 245 (5). Here, the movement of the young victim to the rear of the residence occurred during the assault but by no means was an inherent or essential part of the assault, as the assault could just have easily occurred at the front of the residence. More importantly, *Henderson* held that the mere movement of the victims from one room to another inside the residence "created an additional danger to the victims by enhancing the control of the gunmen over them" and then cited to *Garza* for the proposition that the "kidnapping statute [is] intended to address 'movement serving to substantially isolate the victim from protection or rescue.'" Id. Here, the movement of the young victim to the rear of the residence created an additional danger to the young girl by enhancing the control of Flores over her, as he would not have had such control had he remained in the lighted area in front of the residence, visible and audible to neighbors and the soon-to-arrive mother. Moreover, this movement served to substantially isolate the young girl from protection or rescue, as demonstrated by her mother's inability to locate her and possibly prevent the ensuing rape when the mother was searching the front of the residence. "Accordingly, the element of asportation was established. . . ." Id.[10]

2. Flores complains that the child molestation portion of the indictment charged him with "touching [the victim's] genital area with his penis," but that the evidence at trial showed that the touching may have been with his hand. Quoting *Gentry v. State*,[11] Flores argues that "if an indictment avers that an offense is committed in one particular way, the proof must so show it, or there will exist a fatal variance." Flores's argument for reversal fails for

---

[10] With such clear and decisive Supreme Court of Georgia opinions on point, we are bound by the Georgia Constitution to follow that precedent and therefore are not authorized to consider the holdings of the foreign jurisdictions cited in the dissent. Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI. OCGA § 16-5-40 (a). I note that House Bill 575 (effective date July 1, 2009) amended this Code section and addressed the asportation aspect of the kidnapping offense, but because that is a substantive change to the law, it has no retroactive effect here.

As a general rule, a reviewing court must apply the law as it exists at the time the court's opinion is rendered rather than the law prevailing at the time of an arrest. [However, a statutory] amendment may be applied retroactively if the changes do not affect constitutional or substantive rights and if the legislature did not express a contrary intention.

*State v. McCabe*, 239 Ga. App. 297, 299 (519 SE2d 760) (1999).

[11] *Gentry v. State*, 212 Ga. App. 79, 83 (4) (441 SE2d 249) (1994).

two reasons.

First, some evidence indeed showed that Flores's private part touched the victim's private part. The victim testified that Flores pulled down her pants and tried to touch her private part with his private part, that he penetrated her and that it may have been his private part that penetrated her, and that she cried out to her mother that he was raping her. The mother testified that she saw Flores on top of her daughter with his pants down and that her daughter exclaimed that he was raping her. The medical examiner, while finding no male DNA on the victim, did find dirt and abrasions on the victim's private part and could not rule out penile penetration or contact. In light of this evidence, Flores's counsel tellingly argued (in an attempt to prevent the State from recalling the victim as a witness) that "the State's already established the essential elements of the charges and that [the victim] should not be allowed to testify again."

Second, even if the evidence showed that Flores only used his hand to touch the victim's private part, such would not constitute a fatal variance, as Flores "was on notice that he was being tried for touching the girl in a private area." *Collins v. State*.[12] See *Buice v. State*[13] (variance of proof from allegations is not fatal unless variance precludes defendant from presenting his defense and from not being surprised). As in *Collins*, the difference here between Flores's touching the girl's private area with his hand as opposed to his private part was not a variance that would have misled Flores in his defense against the child molestation charge.

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur. Smith, P. J., concurs and concurs specially. Phipps, Adams and Doyle, JJ., concur in part and dissent in part.*

SMITH, Presiding Judge, concurring and concurring specially.

I agree with all that is said in the majority, but write specially to emphasize the difficulty created by *Garza v. State*, 284 Ga. 696 (670 SE2d 73) (2008), and *Henderson v. State*, 285 Ga. 240 (675 SE2d 28) (2009). *Garza* adopted a four-part test enumerating factors to consider in determining whether a certain movement constitutes asportation, but provides no guidance for analyzing how to balance these factors. Based upon the Supreme Court's decision in *Henderson*, supra, the dissent concludes that "the timing of the movement, and the role it played in the underlying offense, is vital to applying . . . *Garza*." This conclusion, in essence, allows the second factor

---

[12] *Collins v. State*, 269 Ga. App. 381, 382 (1) (b) (604 SE2d 240) (2004).

[13] *Buice v. State*, 239 Ga. App. 52, 58 (4) (520 SE2d 258) (1999).

("whether the movement occurred during the commission of a separate offense") to swallow the fourth factor ("whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense"). That the dissent draws such a conclusion from the Supreme Court's seemingly inconsistent decisions in *Garza*, supra, and *Henderson*, supra, demonstrates the difficulties inherent in applying the four-part *Garza* test. The majority here has done an admirable job in reconciling these issues. In my view, its conclusion that Flores committed kidnapping is the correct result when those four factors are considered as a whole.

DOYLE, Judge, concurring in part and dissenting in part.

I concur fully in Division 2, but I respectfully dissent from Division 1, because the majority fails to properly apply the test articulated by the Supreme Court of Georgia in *Garza v. State*.

In an effort to ameliorate the problems resulting from courts' previous broad construction of the concept of asportation,[14] the Supreme Court of Georgia in *Garza* adopted a new four-part test intended to delineate between movement that is a mere positional change incident to another criminal act and movement sufficient to sustain a kidnapping conviction.[15] As noted by the Supreme Court of Georgia,

> [a]ssessment of these factors will assist Georgia prosecutors and courts alike in determining whether the movement in question is in the nature of the evil the kidnapping statute

---

[14] Previously, the slightest movement was sufficient. See, e.g., *Griffin v. State*, 282 Ga. 215, 219 (1) (647 SE2d 36) (2007). However,

[a]s other courts and commentators have noted, and as [the Supreme Court of Georgia] has witnessed, this expansive construction of asportation poses a potential danger that the definition of kidnapping will sweep within its scope conduct that is decidedly wrongful but that should be punished as some other crime. Thus, for example, the robber who forces his victim to move from one room to another in order to find a cashbox or open a safe technically may commit kidnapping as well as robbery. This reasoning raises the possibility of cumulative penalties or of higher sanctions for kidnapping, even though the "removal" of the victim to another place was part and parcel of the robbery and not an independent wrong.

*Garza v. State*, 284 Ga. 696, 699 (1) (670 SE2d 73) (2008).

[15] Adopted from *Govt. of Virgin Islands v. Berry*, 604 F2d 221, 227 (IV) (3rd Cir. 1979), the test was formulated in an effort to synthesize the various standards employed by jurisdictions embracing the modern approach with respect to asportation. As noted by the majority, the four factors are: (1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation is inherent in the separate offense; and (4) whether the detention or asportation created a significant danger to the victim independent of that posed by the separate offense. See *Garza*, 284 Ga. at 702 (1).

was originally intended to address — i.e., movement serving to substantially isolate the victim from protection or rescue — or merely a "criminologically insignificant circumstance" attendant to some other crime.[16]

Applying *Garza's* four factors to the facts in this case, it is clear, as the majority concedes, that the duration of the movement, the first factor, was short. With respect to the second factor, the majority also correctly concludes that "the movement occurred during the commission of a separate offense."[17] As to the third factor, however, the majority concludes that the movement of the victim to the back yard "was clearly designed to present a significant danger to the victim independent of the assault." However, this incorrectly characterizes the nature of the movement here, which occurred not only during the commission of the underlying offense (as the majority concedes) but also solely in furtherance of that act.

The testimony describing the extent of the movement came from the victim:

Witness: [W]hen he jumped out of the bushes, he started pulling my arm and then . . . he took me to this tree when he was — as he was pulling me, he told me that "why haven't you talked to me" and that — he was like "I want you to be mine and I don't give a — if you don't want to." And then he started pulling me again.

State: [A]s he pulled you, . . . did you want to go with him?

Witness: No.

State: Where did he pull you?

Witness: To the back of my mobile home park.

State: To the back of the park or the back of your home?

Witness: I mean the house, yes. . . .

State: All right. What happened as he pulled you back to the back of your home?

Witness: Somehow he made me trip and then he like started to pull my pants down and as I was trying to pull them up, so he hurt my hand, so —

State: So, he did what?

Witness: He hurt my hand when — because I was pulling them up, he was pulling them. And then he got on top of me, he's tried to, you know, penetrate. So, he couldn't, so I sort

---

[16] *Garza*, 284 Ga. at 702 (1).

[17] Id.

YALE LAW LIBRARY

of pushed him to the side and then I was trying to like get away and then he grabbed me and then he got on top of me. . . .

On recall, the victim again testified that Flores "pulled me [by the arm] . . . to the back of my house" as she struggled "to get away from him" before he pulled her pants down.

This description of the attack demonstrates that the movement here was done in furtherance of and as a part of the underlying offense. *Garza* expressly sought to avoid criminalizing as a separate offense this type of short movement "designed to better carry out the [underlying] criminal activity," because it would allow prosecution for "movements that many other jurisdictions would view as 'incidental' and thus not sufficient to sustain a kidnapping conviction."[18]

Further, with respect to the fourth *Garza* factor, the movement *itself* presented little or no danger (and yielded no injury) independent of the danger posed by the aggravated assault. This is in contrast to a scenario where a victim was taken from one place to another remote location that in and of itself heightened the danger to the victim.[19] Therefore, the movement at issue here was wholly incidental to the underlying crime. Such conduct does not rise to the level of kidnapping under the *Garza* test.

With respect to the majority's reliance on *Henderson v. State*,[20] I do not share the majority's view that the precedent it and *Garza* provide together is "clear and decisive." In *Garza*, the Supreme Court held that an armed captor's forcible movement of his victim from room to room away from police during the course of a false imprisonment did not suffice to support the asportation element of a kidnapping offense.[21] In so holding, the Court explained that the movements did not conceal the victim from police (who were aware of the victim's presence in the residence), did not "thwart in any appreciable way the efforts of the police to free" the victim, and did not "enhance significantly the risk [the victim] already faced as a

---

[18] Id. at 701 (1).

[19] Compare *Berry*, 604 F2d at 227 (IV) (establishing the four-factor test adopted by *Garza* and holding that a short involuntary night-time drive to a beach where victim was robbed did not satisfy kidnapping statute), statutorily superceded, with *Martinez v. Govt. of Virgin Islands*, 2008 U. S. Dist. LEXIS 107613, *11 (III) (C) (2008) (applying the same test and holding that an involuntary, ten-mile, high-speed drive under armed threat to an isolated dead end road where victim was raped was sufficient to support kidnapping conviction). See also *Garza*, 284 Ga. at 701 (1) (collecting cases from other jurisdictions holding slight movements in furtherance of an underlying crime to be insufficient to support a kidnapping conviction).

[20] 285 Ga. 240, 244-245 (5) (675 SE2d 28) (2009).

[21] *Garza*, 284 Ga. at 704 (3).

victim of false imprisonment" by an armed captor.[22]

In *Henderson*, the Supreme Court of Georgia addressed a scenario where the victims of an armed robbery were moved at gunpoint from one room to another within a two-room duplex and ordered to remove their clothes and get on the floor after the completion of the robbery inside the duplex. There, the Court held that this movement did support a kidnapping conviction because the movement was independent of the completed armed robbery, and the movement "created an additional danger to the victims by enhancing the control of the gunmen over them."[23]

The only *clear* distinction between these cases is the point at which the forcible movement occurred. In *Garza*, the room-to-room movement occurred *during* a false imprisonment as police attempted to intervene, and no kidnapping resulted. In *Henderson*, the room-to-room movement occurred *after* an armed robbery was completed, and a kidnapping resulted. Thus, from this precedent it appears that the timing of the movement, and the role it played in the underlying offense, are vital to applying the *Garza* factors.

Here, the forced movement was not a separate act performed after or before a completed assault, but it was a part of the same criminal course of conduct that occurred leading up to and during the attack (even if not a necessary element as a matter of law). Notably, the Supreme Court failed to hold in *Henderson* that the act *most* analogous to the present scenario, i.e., the ordering of one robbery victim from outdoors into the duplex (and out of public view) where the victim was then robbed, was sufficient to establish kidnapping.

Such a kidnapping scenario is similar to the one here and to those cited disapprovingly in *Garza*, i.e., where a victim was forced from one room to another in the course of an attempted rape,[24] where the victim was dragged ten feet from a bus stop into bushes in the course of a robbery,[25] and where a victim was grabbed and forced into a store in the course of an armed robbery.[26] As a technical matter, each of these scenarios could be characterized as isolating the victim from protection or rescue,[27] as the majority asserts here, but the cases relied upon in *Garza* and its analogues in other jurisdictions

---

[22] Id.

[23] *Henderson*, 285 Ga. at 245 (5).

[24] See *Woodson v. State*, 273 Ga. 557, 558 (544 SE2d 431) (2001).

[25] See *Scott v. State*, 288 Ga. App. 738, 739-740 (1) (b) (655 SE2d 326) (2007).

[26] See *Phillips v. State*, 259 Ga. App. 331, 331-332 (1) (577 SE2d 25) (2003).

[27] Similarly, merely forcing a standing victim of an armed robbery to the floor could be construed as "enhancing the control" of a gunman over the victim. Compare *Henderson*, 285 Ga. at 245 (5). I decline to interpret the rationale of *Henderson* so broadly.

correctly do not take such a broad approach when construing their penal codes.[28]

Here, the victim was not moved far and was not held longer than necessary to complete the underlying assault which necessarily involved some detention of the victim. Further, the movement to the back yard was undertaken as a part of and to facilitate the attack; the movement *itself* did not present "a significant danger to the victim independent of the danger posed by the separate offense," as required by the fourth factor in *Garza*.[29]

In light of the particular facts of this case, I do not find the movement in this case sufficient to sustain a conviction for kidnapping under current precedent. The Georgia Code defines the offense as "abduct[ing] or steal[ing] away."[30] As explained in *Garza*, which overruled prior precedent to the contrary, this definition is not satisfied by brief movements that do not themselves pose a danger to

---

[28] See, e.g., *Berry*, 604 F2d at 227 (IV). For example, the Supreme Court of Maryland has characterized the modern trend (followed by our Supreme Court in *Garza* and in a majority of other jurisdictions) as follows:

If the victim is not moved too far, is not held for longer than is necessary to complete the other crime, and is not subjected to any significant peril from the confinement or movement itself, if the confinement or movement can reasonably be viewed as undertaken solely to facilitate the commission of the other crime, and if commission of the other crime normally involves (even if it does not legally require) some detention or asportation of the victim, the court is likely to conclude that the confinement or movement was merely incidental to the other crime and thus reverse 'a separate kidnapping conviction.

*State v. Stouffer*, 352 Md. 97, 110 (721 A2d 207) (1998). Similarly, the Supreme Court of Connecticut has summarized the *Garza* test as follows:

[A] defendant may be convicted of both kidnapping and another substantive crime if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that has independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crime.

*State v. Salamon*, 287 Conn. 509, 530, 547 (949 A2d 1092) (2008) (noting that the hallmark of the offense of kidnapping is an abduction).

[29] See *Maynard v. Govt. of the Virgin Islands*, 2008 U. S. Dist. LEXIS 15632, *10-11 (III) (A) (2008) (evidence that victim was dragged 50-100 feet was insufficient to show that movement was "further than . . . necessary for [the defendants] to commit the crime of robbery"). See also *Ohio v. Price*, 60 Ohio St. 2d 136, 143 (V) (398 NE2d 772) (1979) ("[t]he force by which appellant removed [the victim] from the car to behind a nearby bush to engage in sexual conduct, as required under the rape statute, is indistinguishable from the force by which appellant restrained [the victim] of her liberty, as required under the kidnapping statute").

[30] OCGA § 16-5-40 (a). I note that House Bill 575 (effective date July 1, 2009) amended this Code section and addressed the asportation aspect of the kidnapping offense, but because that is a substantive change to the law, it has no retroactive effect here.

As a general rule, a reviewing court must apply the law as it exists at the time the court's opinion is rendered rather than the law prevailing at the time of an arrest. [However, a statutory] amendment may be applied retroactively if the changes do not affect constitutional or substantive rights and if the legislature did not express a contrary intention.

*State v. McCabe*, 239 Ga. App. 297, 299 (519 SE2d 760) (1999).

the victim and that are committed during an underlying offense inherently involving some confinement.

I am authorized to state that Judge Phipps and Judge Adams join in this opinion.

DECIDED JUNE 26, 2009

*Mack & Harris, Robert L. Mack, Jr.,* for appellant.

*Jewel C. Scott, District Attorney, Billy J. Dixon, Assistant District Attorney,* for appellee.